Steven LAPPE, Plaintiff,

v.

**AMERICAN HONDA MOTOR CO., INC., Honda Research & Development Ltd. of Japan, Honda Motor Corporation Ltd., "John Doe", (names of fictitious manufacturers designers and/or distributors), "ABC Co." Defendants.**

No. 93–CV–902.

United States District Court, N.D. New York.

July 15, 1994.

Office of James Frederick Carney, Rose-
land, NJ (James F. Carney, of counsel), for
plaintiff.

Carpenter, Bennett & Morrissey, Newark,
NJ (Robert M. Goodman, of counsel), for
defendants.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Pending before this court is defendants'
motion for summary judgment pursuant to
Fed.R.Civ.P. 56; and plaintiff's motion for a
transfer of venue pursuant to 28 U.S.C.
§ 1404(a). Oral argument was heard on
June 9, 1994, and the court reserved decision
at that time. The following constitutes the
court's decision on both motions.

In the first motion, Honda Motor Co., et
al., ("defendants") request that the reports

and testimony of plaintiff's expert be exclud-
ed from the trial on the grounds that: (1) he
lacks the expertise required in this litigation
under Rule 702 of the Federal Rules of Evi-
dence; (2) the expert's theories are unsup-
ported under Fed.R.Evid. 703; and (3) plain-
tiff allegedly failed to produce materials in a
timely manner in compliance with a court
scheduling order.[1] Defendants claim that
plaintiff cannot go forward in this litigation
without expert testimony, and therefore,
move for summary judgement.

In the second motion, Steven Lappe
("plaintiff") moves for a change of venue to
accommodate his medical and financial limi-
tations. For the following reasons, both mo-
tions are denied.

### FACTS

This case is a product liability and negli-
gence action arising out of a single vehicle
automobile accident which occurred in Wil-
ton, New York, in the early morning hours of
April 9, 1989. Plaintiff was not wearing his
seatbelt at the time, and was ejected from his
1984 Honda Civic when he either fell asleep,
became unconscious, or lost control of the
vehicle. Plaintiff was taken to Saratoga Hos-
pital in Saratoga, New York, where he was
diagnosed with a spinal cord injury that has
left him permanently quadriplegic. Plaintiff
claims that his neck was broken when the
roof of his car collapsed, and that the injury
occurred before he was thrown from the
vehicle.

Plaintiff's statement of claims alleges that
the defendants were responsible for design-
ing, manufacturing and distributing a defec-
tive automobile which caused plaintiff serious
injury. Plaintiff's claims are based on the
reports and testimony of his liability expert
who argues that Honda's vehicle was defec-
tive with respect to the arrangement, size,
and positioning of its foot pedals, and its
susceptibility to excessive roof crush. The
design and placement of the pedals allegedly
caused plaintiff to confuse the brake and

---

**1.** As a sanction under Fed.R.Civ.P. 37(b)(2)(B),
defendants claim that plaintiff's expert should be
barred from testifying.

accelerator pedals as he attempted to regain control of his vehicle.

Counsel for plaintiff originally filed a complaint against the defendants in New Jersey state court on January 3, 1991. Defendants removed the matter to the U.S.D.C. for the District of New Jersey and later moved to change venue to the Northern District of New York. Over plaintiff's objections, Magistrate Judge Joel A. Pisano recommended a change of venue on July 2, 1993, which was adopted by District Judge H. Lee Sarokin.

Defendants previously sought to ban plaintiff's expert from the trial as a sanction for plaintiff's alleged failure to comply with a court order for production of documents.[2] Their motion was denied by Magistrate Judge Pisano. In addition to renewing their argument for a court sanction which would bar the expert, defendants now move to block his participation at trial on the grounds that he lacks expertise under Fed.R.Evid. 702 and fails to properly support his theories under Fed.R.Evid. 703.

## SUMMARY JUDGMENT

### A. The Summary Judgment Standard.

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact," *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991), and the evidence is such that a "reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 261, 106 S.Ct. at 2516. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* The court's function "is not ... to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511, but "to determine whether there does indeed exist a genuine issue for trial." *Id.*

### B. Fed.R.Evid. 702.

Defendants argue that the development of feasible alternative automotive designs (allegedly required for this litigation) is a task reserved for a true automotive design engineer. Since plaintiff's expert is not an automotive engineer by trade, defendants argue that he lacks expertise in automobile design, and is therefore unqualified to testify in this litigation under Fed.R.Evid. 702.

■■■ District courts are accorded broad discretion in determining the competency of expert witnesses. *United States v. DiDomenico,* 985 F.2d 1159, 1163 (2d Cir.1993). The principle guiding that discretion is Fed. R.Evid. 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

---

**2.** The documents and materials which plaintiff allegedly failed to produce are indirectly related

to the expert's participation in this litigation.

training, or education, may testify thereto in the form of an opinion or otherwise. Fed.R.Evid. 702. The Notes of the Advisory Committee on Fed.R.Evid. 702 explain that "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assist[ance] [to] the trier of fact." Fed.R.Evid. 702 advisory committee note; *see also, United States v. Locascio,* 6 F.3d 924, 936 (2d Cir.1993). The Advisory Committee notes also indicate that the "expert is viewed, not in a narrow sense, but as a person qualified by knowledge, skill, experience, training or education." *Id.* Thus, Fed.R.Evid. 702 requires two determinations on the part of the court. First, the court must decide whether expert testimony could assist the trier of fact in understanding the evidence or determining a fact. MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 6641, at 242–43 (1992 Interim Edition). Second, the court must decide whether the witness called is properly qualified to give the testimony sought. *Id.*

## 1. *Assistance to the Trier of Fact.*

The threshold question is whether the expert's testimony will assist the trier of fact. An expert witness must have such skill, knowledge, or experience in the field as to make it appear that his opinion will *probably* aid the trier of fact in his search for the truth. *Andrews v. Metro North Commuter R.R.,* 882 F.2d 705, 708 (2d Cir.1989); *Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110, 114 (3rd Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). " 'Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.' " *Larabee v. M M & L Int'l. Corp.,* 896 F.2d 1112, 1116 n. 6 (8th Cir.1990) (quoting J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], at 702–30 (1988)).

Plaintiff's expert easily satisfies the first requirement of Fed.R.Evid. 702. The facts involved in this case are of a technical nature. The expert's reports and testimony could assist the trier of fact in its determination of whether plaintiff's 1984 Honda Civic had a substandard design. The expert's participation could also assist in the determination of whether such a design contributed, in any way, to plaintiff's accident and injuries.

## 2. *Qualifications of the Expert.*

The court must now decide the second question of whether the expert is properly qualified to give testimony relating to the litigation. Plaintiff's expert, Dr. James Pugh, holds a bachelor's degree in Metallurgy–Materials Science, and a Ph.D. in Biomedical Engineering. Both degrees were awarded by the Massachusetts Institute of Technology. He is currently a Professor in the Department of Material Science and Engineering at the State University of New York at Stony Brook. He offers courses in applied mechanics, material science, biomechanics, biomaterials, ergonomics, occupational safety and health, strength of materials, and orthopaedic engineering.[3] Plaintiff's expert is also a Registered Professional Engineer. Defendants argue that this expert is unqualified to participate in the litigation because he is not an automotive design engineer.

Fed.R.Evid. 702 only requires that an expert have "scientific, technical, or other specialized knowledge" gained through "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. In a product liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization affects the weight of the opinion, not its admissibility. *Quinton v. Farmland Industries, Inc.,* 928 F.2d 335, 336 (10th Cir.1991). Where an expert has the education or background to permit him to analyze a given set of circumstances, "he can through reading, calculations, and reasoning from known scientific principles make him-

---

**3.** Dr. Pugh's affiliations include the Orthopaedic Research Society, The American Society for Mechanical Engineers, The American Society for Metals, The American Society for Testing and Materials, The Society for Biomaterials, The National and New York State Societies of Professional Engineers, The American Association for the Advancement of Science, and the Society for Automotive Engineering.

In this litigation, Dr. Pugh is employed by Inter–City Testing & Consulting Corporation of Mineola, New York.

self very much an expert in the particular product even though he has not had actual experience in its manufacture." *United States v. Viglia,* 549 F.2d 335 (5th Cir.1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications.[4] An expert must, however, stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline. *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir.1991).

■ On the basis of his credentials and experience, this court is satisfied that plaintiff's expert is "qualified" to testify under Fed.R.Evid. 702. Although he does not design automobiles for a living, this expert is a Registered Professional Engineer in the State of New York, and holds degrees in metallurgy & material science and bio-medical engineering. He is also a member of several professional societies. Since plaintiff's expert has experience in accident reconstruction and analysis of vehicular accidents, he clearly "possess[es] skill or knowledge greater than the average layman" regarding the matter before this court. *Aloe,* 816 F.2d at 114.

## C. *Fed.R.Evid. 703.*

■ Defendants argue that the expert's measurements on the foot pedals and sheet metal of the accident vehicle are insufficient, incomplete, and/or nonexistent, and they urge the court to bar his participation in the litigation under Fed.R.Evid. 703.[5] Defendants also claim that plaintiff's expert lacks "adequate scientific basis" to support his theories of product defect.

Like Fed.R.Evid. 702, the liberal thrust of the federal rules also applies to Fed.R.Evid. 703. *Locascio,* 6 F.3d at 938. Under Fed.R.Evid. 703, courts can "[m]ake a factual inquiry and finding as to what data experts in the field find reliable." *In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 853 (3rd Cir.1990). The exact level at which data is unreliable has not been defined, because "reliability indicia vary so much from case to case [and] any attempt to define such a level would ... be pointless." *Id.* at 858. The court also has the "discretionary right under Fed.R.Evid. 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 208 (2d Cir.1984). The court is under no requirement to make an explicit trustworthiness determination for every form of expert testimony that comes its way. *Locascio,* 6 F.3d at 939.

### 1. *Reliable Basis.*

■ Defendants argue that plaintiff's expert failed to produce reliable data that would support his testimony. They point out that plaintiff's expert never photographed or measured the allegedly defective foot pedals of plaintiff's vehicle and instead relied on photographs and measurements of Honda Civics with automatic transmissions.[6] They also argue that his crash worthiness claims

---

4. *See Gardner v. General Motors Corp.,* 507 F.2d 525, 528 (10th Cir.1974) (mechanical engineer who had no experience designing truck exhaust system qualified as expert to testify about design of that system); *Wylie v. Ford Motor Co.,* 536 F.2d 306, 308 (10th Cir.1976) (knowledge of basic physics rendered a physicist competent to testify concerning the design safety of vehicle's balljointed suspension); *Hammond v. International Harvester Co.,* 691 F.2d 646 (3d Cir.1982) (engineer whose only qualification was sales experience in the field of automotive and agricultural equipment permitted to testify in products liability action involving tractors); *Dixon v. International Harvester Co.,* 754 F.2d 573, 580 (5th Cir.1985) (design engineer permitted to testify on safety of crawler tractor despite lack of experience approving crawler tractor designs); *Laves-*

*pere v. Niagara Machine and Tool Works, Inc.,* 910 F.2d 167, 176–77 (5th Cir.1990) (witnesses allowed to testify on safety of brake design despite lack of personal design experience).

5. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Fed.R. of Evid. 703.

6. Plaintiff's 1984 Civic had a standard transmission.

are similarly unsubstantiated because none of his reports contain references to measurements or tests which were used to support his claims.

Having reviewed the reports and testimony that defendants complain of, this court is satisfied that the bases and sources for the expert's opinions satisfy the requirements of Fed.R.Evid. 703. "Admission of ... testimony does not constitute an abuse of discretion merely because the factual basis for an expert's opinion are weak." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C.Cir. 1993); *see also, Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284, 286–87 (9th Cir. 1975) (indicating that admission of expert testimony constitutes an abuse of discretion only when testimony qualifies as "rampant speculation"). The evidence on both the circumstances of the accident and the design of the vehicle allow this expert to express opinions which appear to be grounded in the results of his investigation, observations, experience, and calculations. He examined accident reports, legal documents, medical records, medical images, owner's manuals and comparable Honda Civics. He also inspected the accident site, accident vehicle, transcripts of witness depositions, reports from defendants' liability experts, numerous photos of the accident scene, and police and medical reports. That he may have neglected to perform some "essential" tests or measurements will go to the weight of his testimony, not its admissibility.

### 2. *Adequate "Scientific Basis."*

In their motion for summary judgment, defendants characterize the expert's participation as "scientific" testimony, and they attempt to make a favorable comparison between this litigation and the recent Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In doing so, defendants argue that plaintiff's expert lacks an "adequate scientific basis" to support his theories of product defect. They support their contention by reiterating the expert's failure to take photographs, perform physical tests on the accident vehicle, and document measurements in his reports.

Traditionally, concern over the reliability/validity of clearly "scientific" testimony only surfaced in criminal cases. The issue was primarily raised with respect to new technology relating to forensic evidence such as DNA, ballistics, and fingerprinting. Michael H. Graham, Federal Practice and Procedure § 6652, at 33 (Supp.1994). By labeling the expert's theories as "scientific," defendants attempt to raise a similar issue in this litigation.

■ The application of *Daubert* to the testimony in the present action, however, would require an expansion of the Supreme Court's language beyond its obvious scope and meaning. *Daubert*'s narrow focus is on the admissibility of "novel scientific evidence" under Fed.R.Evid. 702. *See Daubert*, —— U.S. ——, 113 S.Ct. 2786. *Daubert* only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific and technological knowledge. *See id.*

■ The participation of plaintiff's expert is not based on novel scientific evidence or testimony. In this action, he will participate as an engineer and convey opinions relating to the happening of an automotive accident. As noted earlier, his opinions are based on facts, an investigation, and traditional technical/mechanical expertise. More important, the expert's opinions are supported by rational explanations which reasonable men might accept, and none of his methods strike the court as novel or extreme.

### C. *Conclusion on Fed.R.Evid. 702 & 703.*

Although weaknesses in the methodology and investigation of this particular expert might lead the trier of fact to discount his opinions, this court will do no more than prescribe "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [which] are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, —— U.S. at ——, 113 S.Ct. at 2798 (quoting *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987)).

### D. 37(b)(2)(B) Sanctions.

Defendants argue that pursuant to Rule 37(b)(2)(B), the Court should exclude expert witnesses as an appropriate sanction for "flouting the discovery process." *United States v. 68.94 Acres of Land,* 918 F.2d 389, 396 (3d Cir.1990). This request has no merit. All discovery took place before another District Court. This very same motion was brought by the defendants before the District Court in New Jersey. Magistrate Judge Pisano, who was in a position to monitor and sanction any abuse of discovery, denied the motion. This court will do the same.

### VENUE

Plaintiff currently resides in New Jersey and continues to receive daily care provided by his fiancée and various health care providers, all of whom reside in New Jersey. In his effort to persuade the court to transfer this litigation back to the District from which it came, plaintiff raises the following considerations: (1) that the court should give deference to plaintiff's initial choice of forum; (2) that plaintiff's health has failed significantly since the initial transfer to the Northern District of New York; (3) that the court should consider the financial hardships of the plaintiff, who is both poor and paralyzed; and (4) that the availability of witnesses will play a limited role in this litigation.

With the exception of plaintiff's claim that his medical condition has deteriorated appreciably since the initial transfer,[7] all considerations weigh against transferring this litigation back to New Jersey.

Motions for transfer of venue are made pursuant to 28 U.S.C. § 1404(a), which provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A motion to transfer pursuant to this section rests with the sound discretion of the court. *Golconda Mining Corp. v. Herlands,* 365 F.2d 856, 857 (2d Cir.1966). The court balances a number of considerations when determining whether an action should be transferred. The variables include:

[T]he convenience of the parties; the convenience of the witnesses; the relative ease of access to the sources of proof; the availability of the process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interest of justice.

*Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 56 (N.D.N.Y.1990) (quoting *Vassallo v. Niedermeyer,* 495 F.Supp. 757, 759 (S.D.N.Y.1980)). The moving party " 'bears the substantial burden of establishing that transfer ... [of] this case is in the interest of justice.' " *Nieves v. American Airlines,* 700 F.Supp 769, 772 (S.D.N.Y.1988) (quoting *Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174, 175 (S.D.N.Y.1987)). Furthermore, a discretionary transfer "will not be granted absent a clear cut and convincing showing that the balance of convenience weighs strongly in favor of the transferee court." *Pellegrino v. Stratton Corp.,* 679 F.Supp. 1164, 1166 (N.D.N.Y.1988).

Plaintiff first argues that the court should give deference to his initial choice of forum. Courts will afford some deference to plaintiff's choice of forum, but any presumption favoring the choice is weakened where the action has little relationship to the chosen forum. *Turner & Newall, PLC v. Canadian Universal Ins. Co.,* 652 F.Supp. 1308, 1310 (D.D.C.1987). One measure of the relationship is where the operative facts occurred. *Morales v. Navieras De Puerto Rico,* 713 F.Supp. 711, 712 (S.D.N.Y.1989).

In this action, the litigation is brought on operative facts which bear little connection to plaintiff's requested forum of New Jersey. At the time of the accident, plaintiff was a resident of Saratoga, New York. The accident occurred in Wilton, New York, and plaintiff was taken to Saratoga Hospital in Saratoga, New York, for treatment of his injuries. No act related to this

7. Plaintiff primarily relies upon the affidavit of one Dr. Lawrence J. Nastro to support his claim.

litigation is alleged to have occurred in New Jersey, and aside from the fact that plaintiff now resides in New Jersey, that state has no connection with this litigation or the underlying accident.

Plaintiff's next claim is that since venue was transferred to New York in July 1993, he has suffered from an illness related to a urinary tract infection and thrombophlebitis. Plaintiff's treating physician indicates that his participation in a trial in Albany would be "extremely difficult." Plaintiff himself says that, "[T]he problems which I [originally] anticipated would occur if this case was transferred to New York State ... will surely be more severe than I had previously imagined."

Generally, a plaintiff's choice of forum should not be disturbed, and that rule "should have extra resonance where, as here, the plaintiff suffers from physical disabilities which would purportedly hinder his ability to prosecute his action elsewhere." *Katz v. Smith & Wesson Corp.*, No. CIV–88–1225E, 1989 WL 98772, *2 (W.D.N.Y. Aug. 24, 1989). Nevertheless, having considered the relative interests, this court concludes that the interests of justice would be furthered by retaining the litigation in the Northern District of New York.

Plaintiff has not shown a significant or appreciable deterioration in his health since the motion to transfer venue to the Northern District was considered and granted on July 2, 1993. Although plaintiff was treated for an "extended illness" from October 11, through November 6, 1993, this illness was apparently related to a urinary tract problem that dates at least as far back as December 1991. Plaintiff is currently being treated for thrombophlebitis, but he does not allege or show that this condition has developed or changed since venue was last addressed. Finally, although the court is sensitive to plaintiff's needs, it recognizes that participation at a trial in *any* location will probably result in hardship.

Plaintiff next asks the court to consider the relative financial hardships of the litigants and their ability to prosecute or defend the action in various forums. *Hyde Construction Co. v. Koehring Co.*, 321 F.Supp. 1193, 1212 (S.D.Miss.1969). While defendants are major corporations doing business in both New York and New Jersey, plaintiff is unemployed, disabled, and allegedly unable to effectively litigate this matter in the Northern District of New York.

■ Although a court can consider the relative financial means of the parties in reaching a decision on a motion to transfer venue, *Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y.1989) (citing *Goldstein v. Rusco Industries, Inc.*, 351 F.Supp. 1314, 1318 (E.D.N.Y.1972)), plaintiff has not offered any documentation to show that prosecuting his action in this court would be unduly burdensome to his finances. In fact, plaintiff admits that he traveled to upstate New York for both medical and personal reasons on at least two occasions since the accident. Finally, although defendants can afford to litigate this matter in either jurisdiction, a "shifting of inconveniences is not grounds for transfer." *Arrow Electronics*, 724 F.Supp. at 266 (citing *Finkielstain v. Seidel*, 692 F.Supp. 1497, 1509–10 (S.D.N.Y.1988)), *aff'd in part, rev'd in part*, 857 F.2d 893 (2d Cir.1988).

■ Plaintiff's final argument is that the availability of witnesses is a consideration that should be given less weight by the court. However, the convenience of the forum for witnesses is a very important consideration in motions for transfer. *Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*, 657 F.Supp. 1257, 1258–59 (S.D.N.Y.1987). The vast majority of the fact witnesses, including three police officers, three ambulance squad members, and nine other fact witnesses, are citizens of Saratoga County, New York, which is outside the 100–mile limitation on federal subpoena authority set forth in Fed.R.Civ.P. 45(c)(3)(A)(ii). These witnesses cannot be compelled to attend a trial in Newark, New Jersey. Although it is the nature of the witnesses' testimony, and not their numbers which is important, *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y. 1988); the testimony from these witnesses will play an essential role in determining the outcome of this litigation.

### CONCLUSION

There are genuine issues of material fact which preclude defendants' motion for summary judgment.

After balancing all relevant considerations, the interests of justice and convenience dictate that this matter remain in the Northern District of New York.

Accordingly, it is

ORDERED, that defendants' motion for summary judgment is denied; and it is further

ORDERED, that plaintiff's motion for transfer of venue is denied.

IT IS SO ORDERED.