**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,**
Plaintiff,

v.

**Drzislav CORIC, Administrator of the Estate of Robert Freeman, Theresa Higgins, Administratrix of the Estate of Stephanie Freeman, Theresa Higgins, Individually, Herbert Karp, Executor of the Estate of Ethel Karp, Matthew Massaro, and Kerrie Rogers, Defendants.**

No. 96–CV–0312.

United States District Court,
N.D. New York.

May 6, 1996.

tion that his petitions lacked sufficient *valid* signatures.

Dombroff, Gilmore Law Firm, New York City (Edward Griffith, Raymond L. Mariani, of counsel), for Plaintiff.

Suisman, Shapiro Law Firm, New London, CT (Susan M. Phillips, of counsel), for Defendant Coric.

Lynch, Traub Law Firm, New Haven, CT (Stephen I. Traub, Eric P. Smith, of counsel), for Defendant Higgins.

Coughlin, Gerhart Law Firm, Binghamton, NY (Richard B. Long, of counsel), for Defendant Karp.

McNamara Law Firm, Hartford, CT (F. Timothy McNamara, James A. Zeller, of counsel), for Defendant Rogers.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. INTRODUCTION

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), commenced this action by filing a complaint "in the nature of interpleader" pursuant to 28 U.S.C. § 1335 on February 21, 1996. National Union seeks relief against defendants Drzislav Coric, Theresa Higgins, Herbert Karp, Matthew Massaro and Kerrie Rogers, each of whom claim—or may claim—an interest in a $5 million insurance policy issued by National Union. National Union has moved for an injunction pursuant to 28 U.S.C. § 2361 restraining defendants from instituting or prosecuting any other lawsuits regarding the insurance policy during the pendency of this action. Defendants generally oppose the injunction and have cross-moved to dismiss the case for lack of subject-matter jurisdiction or, in the alternative, to have the case transferred under 28 U.S.C. § 1404 to the District of Connecticut.

## II. BACKGROUND

On April 12, 1993, a small plane crashed while attempting to land in instrument weather conditions at an uncontrolled airport near Cortland, New York. The craft had traveled to Cortland from Groton, Connecticut. At the time of the crash the plane was piloted by Robert Freeman ("Pilot"), a certified flight instructor who apparently was providing instrument flight training to Ethel Karp, who was also on board. Both Robert Freeman and Ethel Karp were killed as a result of the crash. Also killed was the Pilot's daughter, Stephanie Freeman, who was one of the plane's passengers. The remaining two passengers, Matthew Massaro and Kerrie Rogers, survived the crash.

EG & H Corporation, the owner of the plane, had purchased liability insurance ("Policy") on the craft through National Union in 1992, and the Policy "was in full force and effect at the time of the crash." (Pl.'s Mem.Supp.Inj. at 3.) By its terms, the Policy provided liability coverage to all "insureds," which were defined as "not only the Named Insured [ (EG & H) ] but also any person while using or riding in the aircraft [except] any person ... (other than any employee of the Named Insured ...) engaged in ... the operation of [a] ... commercial flying service or flying school with respect to any occurrence arising out of such operations." (Faiia Dec. Ex. 1 at 5.) The Policy also required National Union to defend "any suit against the Insured seeking damages on account of ... bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent." (Id. at 2.)

After the plane crash, the occupants of the plane or their estates—with the exception of

the Pilot's estate [1]—brought personal injury or wrongful death lawsuits in Connecticut state court against the Pilot's estate and/or Ethel Karp's estate.[2] Stephanie Freeman's estate, represented by defendant Theresa Higgins as Administratrix, and Ethel Karp's estate, represented by defendant Herbert Karp as Executor, obtained default judgments of $4.7 million and $1.8 million, respectively, against the Pilot's estate in the Connecticut actions. According to plaintiff, both judgments currently are on appeal. The remaining claims against the Pilot's estate, and all the claims against Ethel Karp's estate, have yet to be tried, however.

Because National Union believes it is required by the Policy to do so, the insurer has defended Ethel Karp's estate without reservation in the state court lawsuits. National Union also admits that it will be liable to pay any non-appealable judgments that may be entered against Ethel Karp's estate *subject to the Policy's $5 million limits.* (Pl.'s Mem.Supp.Inj. at 5 (emphasis in original).) But because National Union does not believe that the Pilot was an "insured" under the Policy—according to the insurer, he was engaged in the operation of a "commercial flying service or flying school" and was not an employee of EG & H—the company initially disclaimed coverage and declined to defend the Pilot's estate. After Stephanie Freeman's estate and Ethel Karp's estate obtained default judgments against the Pilot's estate on liability, National Union apparently decided to defend the Pilot's estate under a "reservation of rights" whereby the company continues to deny that it is *required* to either defend or indemnify the claims.

On January 19, 1996, Stephanie Freeman's estate commenced a subrogation action pursuant to Conn.Gen.Stat. § 38a–321 against National Union in Connecticut Superior Court, District of New London. Because Stephanie Freeman's estate was awarded a $4.7 million judgment against the Pilot's estate, Connecticut law permits her to be subrogated to all the rights of the Pilot and his estate under the Policy. The complaint in the subrogation lawsuit seeks (1) payment by National Union of the $4.7 million judgment Stephanie Freeman's estate was awarded against the Pilot's estate, and (2) additional damages based on allegations that National breached its contract by failing to immediately defend and indemnify the Pilot's estate and committed "unfair insurance practices" [3] by misrepresenting the terms and available coverage under the Policy.

National Union contends that it has brought this statutory interpleader action in order to "provide a single forum for the resolution of all coverage issues, ... avoid the possibility of multiple coverage lawsuits and the possibility of inconsistent judgments arising therefrom, [and] avoid inequitable distribution of the policy limits to the defendants." (*Id.* at 5–6.) Thus the insurer has named as defendants "all of the potential claimants to the Policy, including all of the plaintiffs in the [Connecticut] lawsuits as well as the Pilot's estate." (*Id.* at 6.) In terms of specific relief, National Union asks that the Court grant the company a declaratory judgment that it does not have a duty under the Policy to defend or indemnify the Pilot's estate because, at the time of the crash, the Pilot was operating a commercial flying service or flying school and was not an employee of EG & H. In the event that the Court determines that any of defendants are entitled to policy benefits, National Union asks that they be required "to interplead their claims to the policy limits" and that the insurer be discharged from further liability.

Again, National Union now moves for an injunction pursuant to 28 U.S.C. § 2361 restraining Stephanie Freeman's estate from prosecuting its Connecticut subrogation action against the insurer and enjoining all other defendants from instituting lawsuits regarding the policy during the pendency of this federal action. National Union notes that Section 2361 permits a court to enter an

---

1. The Pilot's estate is represented by defendant Drzislav Coric, as Administrator.

2. Stephanie Freeman's estate, Matthew Massaro, Kerrie Rogers, and Theresa Higgins—Stephanie Freeman's mother—brought actions against the Pilot's estate and Ethel Karp's estate, and Ethel Karp's estate brought an action against the Pilot's estate.

3. Such "practices" are defined by Conn.Gen. Stat. § 38a–816.

order "restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property ... involved in the interpleader action" if the case has been correctly filed under the interpleader statute. *See* 28 U.S.C. § 2361. Furthermore, the insurer argues that it has properly invoked statutory interpleader jurisdiction here because (1) it has filed a complaint against all claimants; (2) the $5 million policy limits at issue exceed the statutory minimum of $500; (3) at least two claimants of diverse citizenship have or may assert entitlements to the Policy; and (4) National Union has deposited a bond in the amount of $5 million with the Court and has agreed to abide by the Court's judgment.

National Union also assures the Court that it should not abstain from exercising its jurisdiction over this case because of the simultaneous state proceedings. In the insurer's view, none of the three bases for abstention that have been recognized by courts in the past applies here. Finally, National Union notes that while a federal court may refrain in some situations from exercising its jurisdiction—even absent ordinary grounds for abstention—where a concurrent state proceeding exists involving the same parties and similar subject matter, the Court should not do so in this case. First, the insurer contends that the subject matter of the Connecticut subrogation action brought by Stephanie Freeman's estate is not sufficiently similar to the present suit. According to National Union,

> [t]his is an *in rem* proceeding against all possible claimants that will decide coverage issues and equitably divide the policy proceeds if necessary. [On the other hand, Stephanie Freeman's] estate purposefully limited its state lawsuit to a direct action by only one claimant to obtain virtually all of the $5 million Policy proceeds for itself. "While there may be some overlap of sub-

ject matter, it is not sufficient to make these actions concurrent."

(*Id.* at 12 (quoting *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir.1988).)) Second, National Union argues that even if the Connecticut action is "concurrent" with this case, the Court should still not refrain from exercising jurisdiction unless "exceptional circumstances" are present, and such circumstances are not present here.

Each of defendants have (1) cross-moved to transfer the venue of this suit from the Northern District of New York to the District of Connecticut pursuant to 28 U.S.C. § 1404(a); (2) cross-moved to have the case dismissed for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1); and (3) opposed plaintiff's request for injunctive relief.[4] In regard to the venue motions, defendants argue not only that this action could have been brought in Connecticut, but also that the convenience of the parties and the convenience of the witnesses indicate that it should be transferred there now.[5] From defendants' perspective, plaintiff filed suit in this district only to "vex, harass, or oppress" defendants. (*See* Def. Higgins' Mem.Supp. Transf. at 20.)

Where the motions to dismiss are concerned, defendants first contend that this is not an interpleader action, but rather a declaratory judgment action not authorized by the interpleader statute. They believe that "National Union's contingent interpleader request [is] merely a collateral concern to its desire to obtain a declaration of 'no coverage' under the policy." (Def. Karp's Mem.Supp. Dism. at 8.) Second, defendants assert that interpleader is inappropriate anyway, because National Union has liabilities here that are not limited by the terms of the Policy. In other words, because the insurer may be liable for breach of contract and other transgressions, it is not an "innocent stakeholder" and is not entitled to interpleader relief.

---

**4.** Specifically, defendant Higgins filed a complete motion to transfer venue and defendant Karp filed a complete motion to dismiss and in opposition to plaintiff's motion. The other defendants, to the extent they made such motions, simply adopted Higgins' and Karp's memoranda because their arguments were the same.

**5.** Although defendant Higgins resides in the Northern District of New York, defendants Coric, Karp, and Massaro reside in Connecticut and defendant Rogers resides in Massachusetts. National Union has headquarters in the Southern District of New York but not the Northern District.

378

Third, defendants contend that an interpleader action is an equitable remedy that cannot be employed by National Union, a company guilty of "inequitable and improper conduct" as well as "undue delay and laches." (*Id.* at 14.) Fourth, defendants request that even if the Court retains jurisdiction over the interpleader claim, it should abstain from exercising supplemental jurisdiction over the claim for declaratory relief. Finally, in defendants' view, the bond submitted by National Union is inadequate because it was issued by a company with ties to National Union and does not account for the possibility of liability on the part of the insurer for breach of contract, unfair insurance practices, etc.

In their opposition to National Union's motion for an injunction, defendants contend that interpleader was never intended to be a "bill of peace" through which all other actions were silenced. Moreover, defendants see this case as especially problematic. Due to National Union's delay in bringing this action and because defaults were entered in the wrongful death actions after National Union initially refused to defend the Pilot's estate, "numerous actions pending in other courts, raising a myriad of issues, are now pending." (Id. at 21.) Defendants consequently urge the Court to reject National Union's attempt to sweep all these actions into one federal proceeding.

## III. DISCUSSION

### A. THE TRANSFER MOTION

■ The Court will address defendants' cross-motions to transfer the case first, because they may make adjudication of the other motions unnecessary. Motions for transfer of venue are made pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion for transfer under this statute rests with the sound discretion of the Court. *Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857

(2d Cir.1966). Among the variables that the Court should consider when making such a determination are:

> [T]he convenience of the parties; the convenience of the witnesses; the relative ease of access to the sources of proof, the availability of the process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interest of justice.

*Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 56 (N.D.N.Y.1990).

Defendants, as the parties moving for transfer, must also keep in mind that they bear " 'the substantial burden of establishing that transfer [of the] case is in the interest of justice.' " *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 229 (N.D.N.Y.1994), *aff'd sub nom. Lappe v. Honda Motor Co. of Japan*, 1996 WL 170209 (2d Cir. Apr. 11, 1996) (quoting *Nieves v. American Airlines*, 700 F.Supp. 769, 772 (S.D.N.Y.1987)). Furthermore, a discretionary transfer under Section 1404(a) "will not be granted 'absent a clear-cut and convincing showing that the balance of convenience weighs strongly in favor of the transferee court.' " *Lappe*, 857 F.Supp. at 229 (quoting *Pellegrino v. Stratton Corp.*, 679 F.Supp. 1164, 1166 (N.D.N.Y. 1988)). Finally, courts consistently have given "some deference" [6] to the plaintiff's choice of forum, with the caveat that "any presumption favoring the choice is weakened where the action has little relationship to the chosen forum." *Lappe*, 857 F.Supp. at 229. One measure of the relationship, not surprisingly, is the connection between the forum and the case's operative facts. *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 (S.D.N.Y.1989).

■ Defendants' primary arguments in support of their motions to transfer revolve around their claim that the District of Connecticut is a significantly more convenient forum for the parties and witnesses. Be-

---

6. This deference translates into the maxim that, generally, a plaintiff's choice of forum should not be disturbed. *Lappe*, 857 F.Supp. at 230.

cause three of the five defendants reside in the state of Connecticut and one defendant resides in eastern Massachusetts, defendants contend that "in terms of distance and travel time, the District of Connecticut is clearly more convenient for these individuals than the Northern District of New York." (Def. Higgins' Mem.Supp.Trans. at 12.) Defendants also argue that the case should be transferred because of the disparate financial burden litigation in New York would place on defendants and their counsel vis-a-vis plaintiff, a company with "superior financial resources." (*Id.* at 19.) In sum, defendants "have clearly and unambiguously expressed their personal preference for a Connecticut forum," as evidenced by their statements and the fact that they already have brought actions in Connecticut state court. (*See id.* at 12–13.)

Where witnesses are concerned, defendants correctly note that courts should look to the nature and quality of the witnesses' testimony with respect to the issues in a case when determining whether a particular venue is more convenient. (*Id.* at 14 (citing *Aquatic Amusement Assocs.*, 734 F.Supp. at 57).) They then argue that defendants Rogers and Massaro—from Massachusetts and Connecticut, respectively—"are the only survivors of the Crash and, therefore, the only individuals who can testify as to the events leading up to ... the Crash."[7] (*Id.* at 15.) Again, according to defendants, the District of Connecticut clearly would be more convenient for these individuals than the Northern District of New York.

Defendants' final argument on their transfer motions is that National Union's choice of forum should be given little or no weight because the insurer selected this district to "'vex,' 'harass,' or 'oppress' the defendants by inflicting upon them expense or trouble not necessary to its own right to pursue its remedy." (*Id.* at 20.) In defendants' view, "the only visible connection between the instant action and the Northern District of New York is the domicile of Theresa Higgins, who is only one of six litigants." (*Id.* at

21.) Moreover, the fact that National Union itself is located outside of the Northern District is further evidence that the company had improper motives in selecting its chosen forum.

After considering defendants' arguments and plaintiff's response, the Court does not believe that transfer of this action to the District of Connecticut is warranted. The Court agrees with defendants that taking all the parties' and witnesses' positions and locations into account, the District of Connecticut could be said to possess a higher "quantum of convenience" than the Northern District of New York. However, defendants simply have not satisfied the heavy burden they bear of proffering "a clear-cut and convincing showing that the balance of convenience weighs strongly in favor of the transferee court." *Lappe*, 857 F.Supp. at 229; *HGI Mktg. Svcs., Inc. v. Pepsico, Inc.*, 1992 WL 349675, *2 (N.D.N.Y. Nov. 11, 1992).

Defendants appear to have overstated the additional inconvenience that would be imposed upon the parties by litigation in Albany, New York, where a trial of this action likely would be held, rather than in Hartford, Connecticut. First, National Union is correct that Albany is only 100 miles from Hartford, a distance shorter than the distance at issue in other cases where transfer was denied. *See, e.g., Paragon Int'l v. Standard Plastics, Inc.*, 353 F.Supp. 88, 92 (S.D.N.Y.1973) (denying transfer from Philadelphia to New York because the distance between the two cities relatively short). Second, defendants claim financial hardship but have submitted no proof of same. They merely suggest that traveling to the Northern District of New York would be more expensive and that National Union has "superior" resources. The caselaw reveals that, "[a]lthough a court can consider the relative financial means of the parties in reaching a decision on a motion to transfer venue," such a conclusory showing does not provide the Court a meaningful basis on which to act. *Lappe*, 857 F.Supp. at 230. Third, defendants hint that this district would be incon-

---

7. More specifically, according to defendants, defendants Rogers and Massaro will testify that the Pilot, Robert Freeman, was in fact piloting the plane at all times immediately before and during the crash. (Def. Higgins' Mem.Supp.Trans. at 15.)

venient for their counsel, all of whom are located in Connecticut, but inconvenience of counsel is not relevant to a motion for transfer. *Esposito v. Metro–North Commuter R.R. Co.*, 1992 WL 165821, *7 (N.D.N.Y. July 8, 1992).

Because of the connections between the forum and the action, the Court would reach the same conclusion even assuming the case were to be tried in Binghamton, New York, rather than Albany. Although defendants argue that "none of the numerous events and proceedings connected with the underlying litigation occurred in the Northern District of New York," (Def. Higgins' Mem.Supp.Trans. at 21), they do so just six pages after essentially conceding that the plane crash, *which took place in this district*,[8] is one of the most important events in the case.[9] In addition, defendant Higgins, whose memorandum in support of her motion to transfer was adopted by the other defendants, resides in this district. As a result, there is a strong connection between National Union's chosen forum and the case's operative facts, *see Morales*, 713 F.Supp. at 712, so despite defendants' claims to the contrary, National Union's choice of forum is entitled to some deference.

### B. THE MOTION TO DISMISS

■ The Court now turns to defendants' multi-faceted argument that this action should be dismissed because the Court either lacks, or should abstain from exercising, subject-matter jurisdiction over it. Defendants first contend that this is not an interpleader action in the ordinary sense of the term, but rather a declaratory judgment action not authorized by the interpleader statute. They believe that

> National Union's principal interest in this litigation is to obtain a declaration from this Court that there exists no coverage under the policy for Robert Freeman, that National Union is not liable for the judgments entered in Connecticut, and that National Union does not have to pay out

$5,000,000, or more, to the defendant-claimants. The Declaratory Judgment Act, 28 U.S.C. § 2201, however, does not create a basis for federal subject-matter jurisdiction.... [Thus no] basis for federal subject-matter jurisdiction exists for the declaratory judgment sought in this case, [because] there is [neither complete diversity nor a federal question].

(Def. Karp's Mem.Supp.Dism. at 8.)

After reviewing the record, the Court must disagree with defendants. It is true that National Union seeks a declaratory judgment in relation to claims against the Pilot. Yet National Union also (1) admits that the Policy requires it to defend and indemnify Ethel Karp as student pilot, and (2) asks the Court, if it determines that some defendants are entitled to benefits from the Policy exceeding $5 million, to issue an order requiring those defendants to interplead their claims against the Policy. This situation is similar to that in *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), where interpleader jurisdiction was found although an insurer pleaded in the alternative for both a declaratory judgment in regard to coverage and interpleader discharge. *See Id.*, 386 U.S. at 526, 87 S.Ct. at 1201. The Supreme Court noted that actions "in the nature of interpleader," like those pursuant to 28 U.S.C. § 1335, include "those in which the plaintiff is not wholly disinterested with respect to the fund he has deposited in court." *See id.* at 532 n. 9, 87 S.Ct. at 1205 n. 9. Thus National Union may seek a declaratory judgment, as it has here, without destroying the Court's subject-matter jurisdiction.

■ Defendants' second argument on their motions to dismiss is that interpleader is inappropriate because National Union has liabilities here that are not limited by the terms of the Policy. In other words, defendants rely on the "no-independent-liability" limitation that once upon a time required denial of interpleader. *See* 7 Charles A.

---

8. Cortland, New York, is only 35–40 miles from the district's Binghamton, New York, courthouse.

9. Again, defendants list defendants Massaro and Rogers as the only surviving witnesses to the crash, and use this reality to argue in favor of transfer.

Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1706 (1986). However, "the judicial trend under [28 U.S.C. § 1335 is] to reject the no-independent-liability restriction." *Id.; see also Royal Sch. Lab. v. Town of Watertown,* 358 F.2d 813, 815 (2d Cir.1966); *Stuyvesant Ins. Co. v. Dean Constr. Co.,* 254 F.Supp. 102, 109 (S.D.N.Y.1966), *aff'd sub nom. Stuyvesant Ins. Co. v. Kelly,* 382 F.2d 991 (2d Cir.1967). The Court consequently finds that "the reasons underlying the interpleader remedy continue to have force even when there is a possibility that [National Union] also may be liable to one [or more] of the claimants on some special basis." Wright, Miller, & Kane at § 1706.

As a third basis for dismissal of the Complaint, defendants contend that an interpleader action is an equitable remedy that cannot be employed by National Union, a company guilty of "inequitable and improper conduct" as well as "undue delay and laches." (Def. Karp's Mem.Supp.Dism. at 14.) Defendants claim that "the record is replete" with evidence of National Union's bad faith. (Id. at 13.) According to defendants, the insurer (1) tried to use its contingent interpleader claim to circumvent the diversity requirements what is really a declaratory judgment action; (2) contributed to the development of the adverse claims on the Policy by breaching its duties to defend and indemnify; (3) is guilty of laches by waiting until defaults had been entered and a subrogation action commenced before seeking interpleader.

■ Defendants are correct that some courts have withheld the interpleader remedy, even when they had authority to grant it, when allowing it might reward inequitable or improper conduct. *See, e.g., Home Indem. Co. v. Moore,* 499 F.2d 1202, 1205 (8th Cir. 1974). But after reviewing the record, this Court will not refuse interpleader on the grounds set forth by defendants. As with the issue of forum convenience, defendants appear once again to be guilty of overstatement. At this stage of the proceedings, the Court cannot conclude with any certainty that National Union has in fact acted with bad faith. Although defendants have *alleged* that the insurer beached its contract and acted improperly, the Court believes that the issue has yet to be conclusively decided. Furthermore, defendants claim that National Union's contingent interpleader request was improper has already been rejected by the Court.

■ In regard to the issue of laches, the Court agrees with National Union that defendants have failed to satisfy the proper standard because they have not articulated any prejudice from the alleged delay. *See Coleco Indus., Inc. v. Universal City Studios,* 637 F.Supp. 148, 150 (S.D.N.Y.1986) (on motion to dismiss interpleader, movant must show prejudice from delay by stakeholder); *In re Bohart,* 743 F.2d 313, 325 (5th Cir.1984) (same). Even if National Union has delayed in bad faith as described by defendants, the Court would be reluctant to deny interpleader on such grounds "[because] the inconvenience to the stakeholder and the courts that would result if multiple litigation, and possibly multiple liability, came to pass are at least as troublesome as rewarding the stakeholder's questionable conduct." Wright, Miller, & Kane at § 1709.

■ Defendants' final basis for arguing that the Court lacks subject-matter jurisdiction is that the bond submitted by National Union is inadequate because it was issued by a company with ties to National Union [10] and does not account for the possibility of independent liability on the part of the insurer. These claims must fail. In regard to the source of the bond, the case relied on by defendants to support the argument that the source was improper actually held only that the *stakeholder itself* could not post the bond. *See Prudential Ins. Co. v. Bank of Commerce,* 857 F.Supp. 62, 64–65 (D.Kan.1994). The bonding company here, although affiliated with National Union to some extent, is a separate entity and no claim has been made that it is not financially sound. In addition, the Court has statutory discretion to allow

---

**10.** National Union and the company issuing the bond, American Home Assurance Company, are both members of "American International Companies," which also includes four other insurance companies.

"such surety as [it] may deem proper," 28 U.S.C. § 1335(a)(1), and the Court simply has not been convinced by defendants that the surety at issue here is improper.

■ The amount of the bond offered by National Union also is sufficient. The posting of a bond is among the requirements for conferring subject-matter jurisdiction on the Court for the *interpleader* action brought by National Union, and interpleader is intended to limit the stakeholder's liability to a certain fixed amount—in this case, $5 million. As the Court already has stated, defendant Higgins' claims against National Union for breach of contract, unfair practices, etc., are independent from the interpleader action brought by National Union. Consequently, they need not be covered by the bond. Defendants are correct that the amount of the bond must be in the "highest amount claimed by the defendants." *National Union Fire Ins. Co. v. Ambassador Group, Inc.,* 691 F.Supp. 618, 621 (E.D.N.Y.1988). In the Court's view, however, this language only refers to the highest possible amount of the *res* in the interpleader action alone. *Ambassador Group* does not hold to the contrary.

■ Defendants final theory on their motions to dismiss is that even if the Court retains jurisdiction over the interpleader claim—which it has—it should abstain from exercising supplemental jurisdiction over National Union's claim for declaratory relief. First, defendants note that the supplemental jurisdiction statute authorizes the Court to decline to exercise jurisdiction over a pendent state claim "if ... the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Because this action is, according to defendants, "predominantly a declaratory judgment action" governed by state law,[11] defendants believe that the Court should refuse to hear it. The Court will not do so, however, because it already has held, in essence, that the declaratory judgment claim by National Union does *not* "substantially predominate" over the company's interpleader claim.

Second, defendants argue that the Court has discretion to abstain from exercising its jurisdiction over the declaratory judgment claim apart from the power granted by Section 1367. On this issue, National Union expends considerable energy in its original motion papers addressing the standards enunciated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In brief, National Union argues that the circumstances ordinarily appropriate for abstention are confined to three narrow categories, none of which applies here. *See Colorado River,* 424 U.S. at 814–16, 96 S.Ct. at 1244–46. Beyond that, the insurer contends that although a federal court sometimes may defer to a "concurrent" state proceeding absent grounds for abstention, this action and the Connecticut subrogation action are not adequately similar. *See id.* at 817, 96 S.Ct. at 1246. Finally, National Union states that even if the two actions are adequately similar, defendants have not shown the "exceptional circumstances" that must exist before a court should defer to the state proceeding. *Id.*

Defendants do not contest National Union's conclusions based on an application of *Colorado River.* Rather, they argue that the analysis is irrelevant because it does not apply to this case. In defendants' view, *Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995), stands for the proposition that the *Colorado River* "exceptional circumstances" standard is not pertinent to whether a district court should exercise its jurisdiction over a claim for declaratory judgment. In fact, say defendants, the Supreme Court in *Wilton* "expressly declined to use the *Colorado River* standard for declaratory judgment actions, and adopted the standard in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)." (Def. Karp's Mem. Supp.Dism. at 17.) Under the *Brillhart* test, the decision to stay or dismiss a declaratory judgment action is within the Court's "sound exercise of ... discretion." *Wilton,* —— U.S.

---

**11.** The definition of "insured" under the policy will have to be interpreted according to state law.

at ——, 115 S.Ct. at 2143. Although the Supreme Court did not attempt "a comprehensive enumeration" of the considerations that should guide a district court's discretion, the court focused the inquiry "[on] whether the questions in controversy between the parties to the suit ... can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176.

■ Although the result was not obvious, the Court finds for defendants on this issue. Like defendants, the Court reads *Wilton* to stand for the following proposition: a district court's decision to hear [12] a declaratory judgment action during parallel state court proceedings is governed by the discretionary standard of *Brillhart* and not the "exceptional circumstances" test of *Colorado River*. *See Wilton*, —— U.S. at ——, 115 S.Ct. at 2144. From a technical standpoint, National Union is correct that this case is not a declaratory judgment action, but is rather more an interpleader action,[13] and therefore arguably is not covered by the law as stated in *Wilton*, which talks about a district court's decision to hear declaratory judgment *actions*. Yet this case does include a declaratory judgment *claim*, and that is the only claim that defendants request the Court to abstain from hearing based on *Wilton*. Thus the real issue to be determined is whether *Wilton*, which clearly requires district courts to apply a discretionary abstention standard to "pure" declaratory judgment actions under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201–02, also requires courts to apply the standard to declaratory judgment claims brought as part of an interpleader action. National Union contends that it does not.

The Third Circuit Court of Appeals has avoided this specific issue by expanding *Wilton* beyond the narrow realm of pure declaratory judgment actions or claims. In *NYLife Distrib., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 382 (3d Cir.1995), the Third Circuit held that the broad discretionary standard set forth in *Brillhart* also applies to a district court's decision to dismiss an entire *interpleader* action commenced under the federal interpleader statute, in favor of parallel state court proceedings. National Union characterizes *NYLife* as "[an] ill-reasoned opinion ... not binding on this Court," (Pl.'s Mem. Opp.Dism. at 12), which is not surprising given that *NYLife* clearly endorses the relief sought by defendants. After reviewing the caselaw, the Court will not go so far as to endorse National Union's description of the Third Circuit's reasoning in *NYLife*, but it also will not go so far as to adopt that reasoning and its extension of *Wilton*.[14]

■ The Court will hold, however, that *Wilton* should be applied to the declaratory judgment claim brought by National Union in this case. At its simplest, the inquiry for a district court presented with request for a declaratory judgment "is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" *Wilton*, —— U.S. ——, 115 S.Ct. at 2140 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176). The Court has not been presented with any reason why this inquiry, which undoubtedly applies to "pure" declaratory judgment actions commenced under the DJA, is less relevant to a declaratory judgment claim brought as part of an interpleader action but still authorized by the

---

12. Whether the district court stays, rather than dismisses, the abstained-from action is of minimal concern because the state court's decision will bind the parties under principles of res judicata. *Wilton*, —— U.S. at ——, 115 S.Ct. at 2141.

13. The Court already has ruled that this is not a declaratory judgment action because it is authorized by the interpleader statute. It also has been held elsewhere, however, that an action cannot be characterized as a "declaratory judgment action" if it is not purely thus; in other words, if an action seeks coercive remedies— such as money damages or an injunction—along

with a declaratory judgment, it "indisputably removes [such a] suit from the ambit of a declaratory judgment action." *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir.1994).

14. The *Wilton* Court specifically referred to the DJA, and not the interpleader statute, because the DJA "has been understood to confer on federal courts *unique* and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, —— U.S. at ——, 115 S.Ct. at 2142 (emphasis added).

DJA. Every declaratory judgment claim—even .those categorized by plaintiffs as collateral to an interpleader claim—is by necessity brought pursuant to the DJA, because the DJA is the ultimate source of federal courts' authority to issue declaratory judgments and the interpleader statute does not mention such judgments.

After applying the broad discretionary standard set forth in *Brillhart*, the Court believes that it should abstain from adjudicating National Union's declaratory judgment claim. In cases such as this, the Supreme Court favors federal deference to the application of state law by state courts in parallel state actions: .

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. *Cf. Employers Reins. Corp. v. Karussos*, 65 F.3d 796, 798 (9th Cir.1995) (holding that courts should abstain in declaratory relief actions presenting issues of state law during pendency of parallel proceedings in state court).

As a threshold matter, the Court has determined, as it must, that the pending state subrogation action related to this case is indeed "parallel" to the declaratory judgment claim here. Because the very basis for deference is the avoidance of needless duplicative litigation, "the absence of a parallel state proceeding ... would counsel against, if not proscribe, dismissal." *NYLife*, 72 F.3d at 382. In the state action, defendant Higgins claims, *inter alia*, that National Union breached the terms of its policy by declining to defend the Pilot's estate. In addressing such claims, the state court will be forced to examine the Policy to resolve the coverage issues that National Union asks this Court to resolve in its request for a declaratory judgment—generally, whether the Pilot was an "insured" under the Policy. Furthermore, the Connecticut state court is better adapted than this Court to resolving the coverage

issues, because Connecticut law will govern the Policy's interpretation. In sum, "the questions in controversy between the parties to the [declaratory judgment claim] can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176.

## C. *INJUNCTIVE RELIEF*

██ In their opposition to National Union's motion for an injunction pursuant to 28 U.S.C. § 2361, defendants contend that according to *Tashire*, interpleader was never intended to be a "bill of peace" through which all other actions were silenced. *See Tashire*, 386 U.S. at 535, 87 S.Ct. at 1206. The Court agrees on that point, but notes that National Union is not seeking to silence *all* other actions. Despite defendants' claims to the contrary, National Union has stated at least a half-dozen times in its papers that it does not seek to enjoin the underlying personal injury/wrongful death actions brought in state court by defendants. Instead, the insurer seeks an injunction that would enjoin all lawsuits against the interpleader *res*—in other words, subrogation actions against the insurer to collect on the Policy. Such relief for the stakeholder is explicitly authorized by *Tashire*:

> [The insurer's] interest [in the interpleader fund] receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself. [Only] to the extent that the District Court sought to control claimants' lawsuits *against the insured and other alleged tortfeasors* [did] it [exceed] the powers granted to it by the statutory scheme.

*Tashire*, 386 U.S. at 535, 87 S.Ct. at 1206 (emphasis added). Thus the Court can and will enjoin defendants from commencing or prosecuting subrogation actions against National Union. Obviously, the exception to this injunction is that defendant Higgins' pending action may proceed so that the state court can determine the Policy coverage issues.

## IV. CONCLUSION

Defendants' cross-motions to transfer this action to the District of Connecticut are here-

by DENIED because defendants have not presented a clear-cut and convincing showing that the balance of convenience weighs strongly in favor of the transferee court. However, defendants' motion to dismiss the Complaint is hereby GRANTED IN PART and DENIED IN PART in that the Court will dismiss National Union's declaratory judgment claim pursuant to the abstention doctrine enunciated in *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214 (1995). The Court will retain jurisdiction over, but stay, the remainder of this action pending the resolution of defendant Higgins' subrogation suit and the other personal injury/wrongful death suits in state court. Finally, National Union's motion for injunctive relief is hereby GRANTED IN PART and DENIED IN PART in that defendants—other than defendant Higgins—are enjoined from commencing or prosecuting any actions against National Union based on the Policy.

**IT IS SO ORDERED.**