**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** Plaintiff–Appellant–Cross–Appellee,

v.

**Herbert KARP, Executor of the Estate of Ethel Karp, Defendant–Appellee–Cross–Appellant,**

**Drzislav Coric, Administrator of the Estate of Robert Freeman, Theresa Higgins, Individually and as Administratrix of the Estate of Stephanie Freeman, Matthew Massaro and Kerrie Rogers, Defendants–Appellees.**

Nos. 593, 1111, Dockets 96–7585(L), 96–7867(XAP).

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1996.

Decided March 4, 1997.

Edward Griffith, Dombroff & Gilmore, New York City (Raymond L. Mariani, Dombroff & Gilmore, on the brief), for plaintiff-appellant-cross-appellee.

David Thomas Ryan, Robinson & Cole, Hartford, CT (Daniel F. Sullivan, Bradford S. Babbitt, Robinson & Cole, on the brief), for defendant-appellee-cross-appellant.

Stephen I. Traub, Lynch, Traub, Keefe & Errante, New Haven, CT (Eric P. Smith, Lynch Traub, Keefe & Errante, on the brief), for defendant-appellee Theresa Higgins.

Before FEINBERG, ALTIMARI, and PARKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant National Union Fire Insurance Co. of Pittsburgh, PA ("National Union" or "insurer") appeals from a judgment of

the United States District Court for the Northern District of New York (McAvoy, *Chief J.*), (1) abstaining from declaring whether or not National Union is liable to indemnify and defend the estate of Robert Freeman ("Freeman" or the "pilot") under an insurance policy, and (2) denying National Union's request for injunctive relief to the extent of allowing the issue of the pilot's coverage under the policy to be determined in a concurrent Connecticut state court action. *See National Union Fire Ins. Co. v. Coric*, 924 F.Supp. 373 (N.D.N.Y.1996). The district court, in the exercise of its discretion, abstained from hearing the insurer's claim for declaratory relief because it concluded that the issue of coverage under the policy was more appropriately adjudicated in the state court action. We agree and, therefore, affirm. We reverse, however, the district court's enjoining of Ethel Karp's estate from joining the Connecticut state court action.

### Background

On April 12, 1993, a small plane en route from Groton, Connecticut crashed near Cortland, New York. Freeman was piloting the plane, and was providing flight instruction to a student pilot, Ethel Karp ("Karp"). Freeman, Karp, and Freeman's daughter, Stephanie, died in the crash. Two other persons on board, Matthew Massaro ("Massaro") and Kerrie Rogers ("Rogers"), survived.

At the time of the crash, the plane was covered by a liability insurance policy issued by National Union to the plane's owners, which named as insureds (1) the plane's owner, and (2) all persons "using or riding in the aircraft," excluding persons "engaged in . . . the operation of [a] . . . commercial flying service or flying school with respect to any occurrence arising out of such . . . operations." The policy provided, among other things, that National Union would defend the insureds against any suits seeking damages for bodily injury up to a maximum of $5 million.

After the crash, the estates of the persons killed in the crash, except the pilot's, and the survivors brought wrongful death or personal injury actions in Connecticut state court against the pilot's estate and/or Karp's es-

tate. Although National Union defended Karp's estate, it initially disclaimed coverage of the pilot and declined to defend his estate in the lawsuits. According to the insurer, it believed that Freeman was operating a commercial flying service or flying school at the time of the crash and, therefore, was excluded from coverage under the policy. However, after the estates of Stephanie Freeman and Karp obtained default judgments against the pilot's estate arising from National Union's failure to answer the complaints, National Union decided to defend Freeman's estate under a "reservation of rights." Following separate jury trials, Stephanie Freeman's estate was awarded approximately $3.9 million in damages, and Karp's estate was awarded approximately $1.4 million in damages. The amounts of the judgments are now estimated by National Union to be approximately $4.7 million and $1.8 million, respectively, and are currently being appealed by National Union. None of the other actions against the pilot's estate have gone to trial.

On January 19, 1996, the defendant Theresa Higgins ("Higgins"), the administratrix of Stephanie Freeman's estate, commenced a direct action on behalf of the estate against National Union in Connecticut state court pursuant to Connecticut's direct action statute, Connecticut General Statutes § 38a–321. Under the statute's provisions, Stephanie Freeman's estate became subrogated to all of the rights that the pilot and his estate have under the policy, once it obtained a judgment against the pilot's estate. The complaint in the direct action seeks payment of the $4.7 million judgment obtained against the pilot's estate, and additional damages against National Union for its initial failure to defend the pilot's estate based on allegations of, *inter alia*, (1) breach of contract, and (2) unfair insurance practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes § 42–110a.

National Union then commenced the instant interpleader action under 28 U.S.C. § 1335 in the Northern District of New York, naming as defendants all of the potential claimants to the policy, including all plaintiffs

in the various Connecticut lawsuits. Its complaint seeks (1) a declaration that National Union does not have a duty to indemnify or defend the pilot's estate under the policy, because at the time of the crash the pilot allegedly was operating a commercial flying service or flying school, and (2) in the event the court does determine that some or all of the defendants are entitled to the policy benefits, that they be required to interplead their claims up to the policy limit of $5 million, and that National Union be discharged from further liability on the policy. The complaint also seeks to restrain Stephanie Freeman's estate from further prosecution of the direct action against National Union, and to enjoin all other defendants from instituting actions regarding the policy during the pendency of the interpleader action, pursuant to 28 U.S.C. § 2361.

The defendants moved to transfer venue to the District of Connecticut, and to dismiss the action for lack of subject-matter jurisdiction. According to the defendants, National Union's action was really a declaratory judgment action disguised as an interpleader action, and because there was not complete diversity of citizenship the court lacked subject-matter jurisdiction over the action. In the alternative, the defendants argued that the district court should abstain from adjudicating the declaratory claim in National Union's complaint, and allow the issue of coverage to be determined in Stephanie Freeman's estate's direct action against National Union in Connecticut state court. The defendants also opposed National Union's request for injunctive relief.

The district court denied the motion to transfer venue. Further, relying on the Supreme Court's opinion in *Wilton v. Seven Falls Co.,* — U.S. —, —, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214 (1995) (holding that the district court in that case properly abstained from hearing a case brought under the Declaratory Judgment Act as a matter of its discretion, where a parallel or concurrent action in state court was already underway), the district court determined that, although it had subject-matter jurisdiction over National Union's action because the action was in the nature of an interpleader, it would exercise its discretion and abstain from adjudicating that part of the complaint seeking a declaration of whether the pilot was or was not covered under the policy. According to the district court, because Stephanie Freeman's estate's direct action against National Union was a concurrent state proceeding and the state court was "better adapted than this Court to resolving the coverage issues," it could similarly abstain from adjudicating National Union's claim for declaratory relief as a matter of its discretion. Consequently, the district court declined to enjoin Stephanie Freeman's estate's direct action in Connecticut state court. The district court, however, retained jurisdiction to adjudicate the remaining interpleader issues raised in National Union's complaint, and enjoined the other defendants from prosecuting any actions against National Union regarding the policy.

National Union appeals the district court's decision, contending that the court erred (1) by abstaining from deciding the declaratory claim of its complaint, (2) by applying the wrong standard to determine whether it should abstain, and (3) by determining that the direct action in Connecticut state court was a "concurrent" proceeding. The estate of Karp cross-appeals, contending that the district court erred by enjoining it from joining Stephanie Freeman's estate's Connecticut action.

### *Discussion*
### 1. National Union's Appeal

This case is one of first impression in our Circuit, to the extent we are asked to decide whether a district court can abstain from the declaratory relief claims included in an interpleader action *as a matter of its discretion,* pursuant to the Supreme Court's holding in *Wilton v. Seven Falls Co.,* or whether any such abstention must be exercised under the "exceptional circumstances" standard established by *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and its progeny. Because the issue is a legal one, we review *de novo* the district court's decision regarding which standard to apply.

National Union essentially posits two reasons in support of its claim that the district

court erred by abstaining. First, according to National Union, *Wilton's* holding is limited to actions exclusively brought under the Declaratory Judgment Act ("DJA" or "Act"), 28 U.S.C. §§ 2201–02. Because its action is brought under the interpleader statute, National Union contends that the district court was bound to apply the "exceptional circumstances" standard governing abstention set forth in *Colorado River*, and erred in applying the discretionary standard set forth in *Wilton*. Second, National Union contends that the district court erred in concluding that Stephanie Freeman's estate's direct action against it is a concurrent state proceeding. Both contentions are unavailing.

## A. Applicability of *Wilton*

For the following reasons, we find unpersuasive National Union's contention that *Wilton's* holding is limited to actions exclusively brought under the DJA, and is not applicable to claims for declaratory relief raised in other contexts.

■ First, the contention is grounded on a distinction lacking any substance. The DJA is procedural in nature, and merely offers an *additional remedy* to litigants. *See Wilton*, —— U.S. at ——, 115 S.Ct. at 2143 ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). That remedy remains available to litigants at the discretion of the court, in *any* "case of actual controversy" for which federal subject matter jurisdiction exists, *see* 28 U.S.C. § 2201(a), provided that the claim for declaratory relief is pleaded in accordance with Rules 8 and 10 of the Federal Rules of Civil Procedure. Consequently, as the district court correctly noted, the ultimate authority to grant declaratory relief in a case rests with the DJA itself, whether or not the claim for declaratory relief is brought solely under the DJA or is added to claims for relief brought under other auspices. Thus, the rationale underlying *Wilton's* holding, namely, that the district court is afforded broad discretion under the DJA, *see Wilton*, —— U.S. at ——, 115 S.Ct. at 2142 ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants[.]"), is equally applicable to a claim for a declaration of non-coverage under an insurance policy raised in the context of a statutory interpleader, as it is to a claim for declaratory relief raised in any other context.

Second, National Union's action is not a typical interpleader action. Ordinarily, in an interpleader action the insurer is subject to conflicting claims to a policy, such as when two or more persons are claiming to be policy beneficiaries. As the Supreme Court explained in the seminal case *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), the insurance problem underlying the enactment of the interpleader statute "was that of an insurer faced with conflicting but mutually exclusive claims to a policy, rather than an insurer confronted with the problem of allocating a fund among various claimants whose independent claims may exceed the amount of the fund." *Id.* at 533 n. 15, 87 S.Ct. at 1205 n. 15. To the extent that National Union seeks to adjudicate the allocation of its $5 million policy limit among the several claimants whose claims amount to more than the policy limit, and to obtain a declaration of non-coverage against the pilot's estate, its arguments against abstention based on the allegedly "pure" nature of its interpleader action are less tenable. *Cf. Quackenbush v. Allstate Ins. Co.*, —— U.S. ——, ——, 116 S.Ct. 1712, 1722, 135 L.Ed.2d 1 (1996) ("[W]e have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief.").

Third, we have previously held that the availability of interpleader jurisdiction does not require its exercise, and the district court acts within its discretion to decline adjudicating issues raised in an interpleader action that can be "fairly adjudicated" in state court. *See Truck–A–Tune, Inc. v. Re*, 23 F.3d 60, 63 (2d Cir.1994); *see also American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d

Cir.1990) (per curiam) (a district court can abstain from "deciding an interpleader action if another action could adequately redress the threat that the [insurer] might be held doubly liable."). As explained immediately below, the direct action against National Union brought by the estate of Stephanie Freeman would adequately and fairly adjudicate, among other things, the issue of whether the pilot was excluded from coverage under the policy.

■ Accordingly, the district court did not err as a matter of law in applying the discretionary standard enunciated in *Wilton* when determining whether to abstain from adjudicating the issue of the pilot's coverage under National Union's policy.

### B. The Connecticut direct action is a concurrent proceeding

■ National Union contends that the direct action against it by Stephanie Freeman's estate is not a concurrent proceeding to the instant federal action. We disagree.

■ Federal and state proceedings are "concurrent" or "parallel" for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same. *See Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46, 49–50 (2d Cir.1994); *see also Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir.1985) (proceedings are parallel where essentially the same claims and same relief is sought in both actions); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985) (parties in state and federal actions must be substantially the same).

The district court correctly noted that in the direct action against National Union, the Connecticut court will have to determine whether the pilot was covered or excluded under the policy in order to resolve whether Stephanie Freeman's estate is entitled to recover the $4.7 million judgment it obtained against the pilot's estate. Because (1) the primary claim for declaratory relief raised by National Union in the instant action will be raised and decided in the state action, and (2)

National Union and the estate of Stephanie Freeman are parties in both suits, the Connecticut direct action is a "concurrent" proceeding to the instant action.

### C. The district court did not abuse its discretion in abstaining

■ The district court's decision to abstain is reviewed for abuse of discretion. *See Wilton*, — U.S. at —, 115 S.Ct. at 2144.

■ In *Wilton*, the Supreme Court noted that although *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), "did not set out an exclusive list of factors governing the district court's exercise of [its] discretion, it did provide some useful guidance in that regard." *Wilton*, — U.S. at —, 115 S.Ct. at 2140. Specifically, the district court's inquiry "should examine 'the scope of the pending state court proceeding and the nature of defenses open there,'" *id.* at —, 115 S.Ct. at 2141 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76), and should entail consideration of, *inter alia*, "'whether the claims of all parties in interest can satisfactorily be adjudicated in [the pending state court] proceeding.'" *Id.* (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76). According to the *Wilton* court, "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Id.* (citation omitted). In the last analysis, "[t]he question for a district court ... is 'whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding pending in the state court.'" *Id.* at —, 115 S.Ct. at 2140 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176). *Accord Youell v. Exxon Corp.*, 74 F.3d 373, 375–76 (2d Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 2514, 135 L.Ed.2d 203 (1996).

Here, the district court considered the nature of the Connecticut state court action, and whether that action would satisfactorily adjudicate the issue of coverage disputed by National Union and Stephanie Freeman's estate. It concluded that National Union's de-

claratory judgment claim could better be settled in the state proceeding. *See National Union,* 924 F.Supp. at 384. Its decision to abstain based on this conclusion does not constitute an abuse of discretion, as it neither is premised on the application of an incorrect legal standard nor a clearly erroneous finding of fact. *See Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 332 (2d Cir.1995).

## 2. Karp's Estate's Cross–Appeal

■ We review the district court's grant of injunctive relief pursuant to 28 U.S.C. § 2361 for an abuse of discretion. *See Ashton v. Josephine Bay Paul and C. Michael Paul Foundation, Inc.,* 918 F.2d 1065, 1070 (2d Cir.1990) (citing *Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75, 82–83 (10th Cir.1955)). Such review entails ensuring, among other things, that the district court's discretionary power under section 2361 is "not exercised in an arbitrary, capricious, or willful manner but with due regard for that which is equitable and just under the circumstances. It is action directed by the court's reason and conscience to a just result." *Holcomb,* 228 F.2d at 82.

■ The district court concluded that, because Karp's estate sought to join Stephanie Freeman's estate's direct action as the result of its subrogation to the pilot's rights under the policy, Karp's estate appropriately could be restrained from prosecuting claims under the policy pursuant to the Supreme Court's ruling in *Tashire. See id.,* 386 U.S. at 535, 87 S.Ct. at 1206 (explaining that the insurer's interest in the interpleader fund "receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against the insured"). We conclude, however, that restraining Karp's estate in this instance would be inequitable and unjust.

First, Karp's estate seeks to assert a claim against the insurer that is identical to the claim Stephanie Freeman's estate has asserted against the insurer; namely, recovery of a judgment obtained against the pilot's estate for a wrongful death, based on subrogation to the pilot's estate's rights under the policy to be indemnified and defended by National Union. Although the district court's decision allows Stephanie Freeman's estate to litigate the coverage issue in the Connecticut court as the pilot's estate's subrogee, Karp's estate is precluded from litigating the very same claims. Second, prohibiting Karp's estate from joining the Connecticut direct action may have the unjust effect of binding Karp's estate to a determination of the crucial coverage issue without ever allowing it the opportunity to participate in litigating the issue. We further note that there would be no delay in the proceedings were Karp's estate to join the Connecticut direct action, because that action has been enjoined pending the outcome of this appeal.

Accordingly, because restraining Karp's estate from joining the Connecticut direct action leads to an unjust and inequitable result, the district court abused its discretion by granting National Union's motion for an injunction against Karp's estate pursuant to section 2361.

### *Conclusion*

For the reasons stated above, the judgment of the district court with respect to National Union's appeal is affirmed. However, the judgment of the district court enjoining Ethel Karp's estate from joining Stephanie Freeman's estate's direct action in Connecticut state court is reversed.