SEARS, ROEBUCK & COMPANY and Emerson Electric Company, Appellants,

v.

Robert E. KUNZE, Appellee.

No. 09–97–189 CV.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 19, 1998.

Decided July 29, 1999.

Rehearing Overruled Oct. 7, 1999.

Scott J. Atlas, Marie R. Yeates, Penelope E. Nicholson, Gwen J. Samora, Vinson & Elkins, LLP, Houston, Carl Robin Teague, San Antonio, Gilbert I. Low, Orgain, Bell & Tucker, LLP, Beaumont, for appellant.

Curtis W. Leister, Reaud, Morgan & Quinn, Beaumont, Derrel Luce, Waco, for appellee.

Before BURGESS, STOVER and HILL,[1] JJ.

## OPINION

JOHN HILL, Justice (Assigned).

In this product liability case, Sears, Roebuck & Company and Emerson Electric Company appeal from a $2.5 million plus judgment in favor of Robert E. Kunze that was entered based upon the verdict of a jury. The appellants present eight issues in which they contend that: (1) the jury's refusal to find that the 10–inch radial arm saw that Kunze was using when he amputated several fingers was unreasonably dangerous as designed fatally conflicts with the jury's finding that the saw was negligently designed; (2) the jury's refusal to find that the saw was unreasonably dangerous as designed fatally conflicts with the jury's finding that the saw, as designed, posed an extreme risk of harm considering the probability and magnitude of the risk; (3) the trial court reversibly erred by excluding evidence relating to an out-of-court test showing that the accident could not have happened as described by Kunze, even though, they contend, they conducted the test under conditions substantially similar to those described by Kunze; (4) the trial court reversibly erred by admitting evidence of approximately ninety other accidents involving other Sears radial arm saws; (5) the trial court erred in awarding punitive damages against Emerson because the evidence is both legally and factually insufficient to support the jury's finding that Emerson was grossly negligent; (6) the $2 million in punitive damages awarded in the trial court's final judgment exceeds the four-times-actuals cap in TEX. CIV. PRAC. & REM. CODE § 47.001 (1987 version) and is therefore excessive; (7) the evidence is both legally and factually insufficient to support the jury's finding that negligence on the part of Sears and Emerson proximately caused the injury in question; and (8) the evidence is both legally and factually insufficient to support the jury's finding that Emerson, Sears, and the radial arm saw caused 70% of the injury while Kunze only caused 30% of the injury.

We affirm the judgment because: (1) the evidence is both legally and factually sufficient to support the jury's finding of negligence on the part of the appellants; (2) there is no conflict in the jury's answers, and, even if there were, the appellants made no objection to any conflict

1. The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).

prior to the jury being discharged; (3) the trial court did not abuse its discretion either in excluding evidence of the test conducted by the appellants or in admitting evidence of other injuries or claims related to the saw for the limited purpose of showing notice to the appellants of such claims and showing conscious indifference; (4) the appellants present no argument or authority in support of their contention that the evidence is legally and factually insufficient to support the jury's apportionment of fault; (5) the evidence is legally and factually sufficient to support the jury's finding of gross negligence; and (6) the award of exemplary damages does not exceed the statutory cap contained in section 41.007 of the 1987 version of the Civil Practice and Remedies Code.

## LEGAL SUFFICIENCY OF THE EVIDENCE NEGLIGENCE

■ While using a Sears Craftsman 10–inch radial arm saw that he purchased at an estate sale, the appellee, Robert Kunze, suffered an amputation injury to four fingers of his left hand. The appellants contend in issue number seven that the evidence is both legally and factually insufficient to support the jury's findings that negligence on their part proximately caused Kunze's injury. When considering the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the jury's finding, and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there exists any evidence to support the finding, the point will be overruled and the finding upheld. *See Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). We need not disregard undisputed evidence that allows of only one logical inference. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 51, n. 1 (Tex.1997).

Kunze, a licensed professional engineer, testified, demonstrating how he was working when he got his hand caught in the blade of his saw. He said that either the new guard or an older guard would have prevented him from contacting the blade.

Dr. George Greene, a consulting engineer, testified that in his opinion a prudent manufacturer would not have marketed the saw Kunze was using without a lower blade guard. He also indicated that the lower blade guard available as an option for older model saws would have prevented Kunze's injury. He indicated that selling the saw without a guard was both a producing and proximate cause of Kunze's injury. He stated that all other manufacturers had lower blade guards on their saws. He asserted that there is a large propensity for injury on a radial arm saw without the guard being there. He testified that he had discovered that the optional lower blade guard was not readily available for purchase.

Michael Gililland, a former safety engineer for Emerson, testified that when the Occupational Safety and Health Administration (OSHA) issued a regulation in 1971 that required all radial arm saws in the workplace to have a lower blade guard, Emerson equipped its 12–inch saws that it sold for commercial use with such a guard, but not its 10–inch consumer version. He indicated that he had testified in another case that this change was prompted by the regulation. He stated that management could have decided to equip the 10–inch saw with such a lower blade guard in 1971 had it chosen to do so. He noted that summaries made by Emerson of claims made as a result of incidents with the saw did not normally include notations concerning claims of injury due to the lack of a lower blade guard, although there were many cases involving such claims. We hold that the evidence is sufficient to support the jury's finding that negligence on the part of Sears and Emerson proximately caused Kunze's injury.

■ On appeal the only basis of negligence relied upon by Kunze is negligent marketing of the saw without a lower blade guard. The appellants argue that at trial Kunze abandoned this claim, choosing

to rely only on a design defect that the jury rejected. The only record reference that the appellants give to support their contention of claim abandonment is to Kunze's trial pleading, in which the appellants concede that he did allege their negligence in marketing the saw without the lower blade guard. The charge of the court, after asking the jury about design defect, asked a general question concerning whether the negligence of "the persons named below" was a proximate cause of the injury in question. The appellants and Kunze were the persons named. Nothing about this question indicates an abandonment of Kunze's claim that the appellants were negligent in marketing the saw without the lower blade guard. In their brief the appellants even concede that all of the evidence Kunze offered was aimed at showing that they should be held liable for failing to include a lower blade guard on the saw as a standard feature. The appellants' assertion that Kunze abandoned his claim of negligent marketing is not supported by the record.

■ The appellants insist that there is no evidence of negligent marketing, in effect urging that evidence showing that a lower blade guard should have been included with the saw instead of as an accessory was a design problem, not a flaw in their marketing of the product. They argue that a marketing defect occurs when a defendant markets a product "without adequately warning of the danger or providing instructions for safe use." See Clark Equipment Co. v. Pitner, 923 S.W.2d 117, 126 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Clark did not involve the issue of whether one could recover for negligence in marketing a device without necessary safety equipment or without such equipment being readily available. Id. This is also true of Bristol–Myers Co. v. Gonzales, 561 S.W.2d 801, 804 (Tex. 1978), the case upon which the Court in Clark relies. While it is true that a failure to warn can constitute a marketing defect in strict liability, we do not know why

negligence in marketing a device without necessary safety equipment or without making such equipment readily available cannot constitute negligent marketing. We do not accept the appellant's conclusion that there was no evidence of negligent marketing of the saw in question.

## FACTUAL SUFFICIENCY OF THE EVIDENCE NEGLIGENCE

■ In determining whether the evidence is factually sufficient, we must weigh all of the evidence in the record. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Id.

■ Jim Metzger testified that he is a registered professional engineer employed by Emerson. He indicated some of the difficulties encountered by Emerson engineers in trying to develop a lower blade guard for the 10–inch radial saw. One problem to which he referred was that consumers use the saw for many different kinds of cuts making it difficult to guard the blade with respect to all uses. He also explained that some guards that might have worked did not comply with government and industry standards that required that the guard must automatically ride over the work piece and return to its original position upon leaving the work piece. He mentioned that what became known as the Metzger guard was made a standard part of the 10–inch saw the year after Kunze's injury.

Michael Gililland, a former Emerson safety engineer, testified that at the time of trial he did consulting work for Emerson and other companies, with most of his time spent in assisting in litigation. He mentioned that industrial and commercial users of the 12–inch saw, which came with a lower blade guard as standard equipment, used the saw almost exclusively in crosscutting, while home users used the saw for many different kinds of cuts.

Gililland indicated that he came to work for Emerson shortly after the saw in question was originally purchased. He evaluated the safety of Emerson's products at that time and concluded that the lower blade guard that was an accessory for the 10–inch saw was a nuisance and a hazard, with more problems than advantages. He indicated that it did not provide protection in any number of operations. He stated that industry standards refer to the hazards associated with lower blade guards. He spoke of efforts to develop the "Stackhouse guard." He said that after it was developed and tested with consumers it was rejected because it was causing a false sense of security, and because it was causing misuse patterns of the saw that had not been anticipated and were in greater numbers than would have been expected. Considering all of the evidence presented, we find that the jury's finding of negligence on the part of the appellants was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule the appellants' contentions presented for review in issue number seven.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE APPORTIONMENT OF FAULT

The appellants insist in issue number eight that the evidence is both legally and factually insufficient to support the jury's finding that they were 70% at fault in causing the accident while Kunze was 30% responsible. Inasmuch as the appellants have presented no argument or authority with respect to this issue, nothing is presented for review. *See* Rule 38.1(h), TEX. R. APP. P.; *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 568 (Tex.1984); *Howell v. Murray Mortg. Co.,* 890 S.W.2d 78, 81 (Tex.App.—Amarillo 1994, writ denied). We overrule the appellants' contention presented in issue number eight.

## CONFLICT IN JURY FINDINGS

■■■ The appellants contend in the first issue presented that the jury's refusal to find that the 10–inch radial arm saw was unreasonably dangerous as designed conflicts with the jury's finding that the saw was negligently designed. They contend in the second issue that the jury's refusal to find that the 10–inch radial arm saw was unreasonably dangerous as designed is in fatal conflict with the jury's gross negligence finding. While in question 1 the jury did not find that any design defect in the saw was a producing cause of Kunze's injury, in question 2 the jury found that negligence on the part of both Kunze and the appellants was a proximate cause of the injury. In question 5, the jury found that Emerson was grossly negligent, but failed to find that Sears was grossly negligent. Appellants' contention that these findings conflict is based upon what we have held to be the erroneous assumption that Kunze had abandoned his claim of negligent marketing. Inasmuch as Kunze had not abandoned that claim, there is no conflict between these findings because the findings of negligence and gross negligence are attributable to the negligent marketing claim. In any event, the appellants made no objection to any conflict between the jury's answers prior to the jury being discharged. Consequently, they have failed to preserve error with respect to any conflict. *See Isern v. Watson,* 942 S.W.2d 186, 191 (Tex.App.—Beaumont 1997, pet. denied). We therefore overrule the appellants' contentions in issues one and two.

## EXCLUSION OF TEST

■■ The appellants urge in issue number three that the trial court committed reversible error by excluding evidence relating to an out-of-court test that they contend shows that the accident could not have happened as described by Kunze, and that they contend they conducted under conditions substantially similar to those described by Kunze.

■ A test that a party offers at trial regarding how an accident occurred will be admissible only if the trial court determines that there is a substantial similarity between the test conditions and the accident conditions. *See General Motors Corp. v. Gayle,* 951 S.W.2d 469, 475 (Tex. 1997). Rule 702 of the Texas Rules of Evidence provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

■ In addition to being relevant, the underlying scientific technique or principle must be reliable. *See E.I. duPont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 557 (Tex.1995). The many factors that the trial court may consider in making the threshold determination of admissibility include, but are not limited to:

1. the extent to which the theory has been or can be tested;

2. the extent to which the technique relies upon the subjective interpretation of the expert;

3. whether the theory has been subjected to peer review and/or publication;

4. the technique's potential rate of error;

5. whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

6. the non-judicial uses that have been made of the theory or technique. *Id.*

The test in question was sponsored by the testimony of Dr. Gary Deegear, a former practicing physician who, at the time of trial, was a technical director and consultant for Biodynamic Research Corporation. He indicated that his firm did primary research in using human tissue substitutes and interacting with power tools to see how injuries occur. With respect to the test in question, he indicated that it consisted of a subject feeding a work piece through a slit in a screen. At some point in the test, a person on the other side of the screen would suddenly yank it away from the push stick, causing the push stick that the subject was applying to the end of the work piece to slip suddenly. He said that at that point he was hoping to capture what the normal reflexes would demonstrate. He testified that the circumstances and conditions of the demonstrations were substantially similar, though not exactly similar, to the circumstances and conditions existing at the time of the accident as described by Kunze. He acknowledged that there was no real saw blade used because of the danger and that there was no kickback situation because of the danger and because the push stick did not slip in kickback experiments. Deegear conceded that he was not aware of any other medical professional who had performed similar testing that had been published in peer review journals, that his study had not been published in peer review journals, that any potential rate of error was probably based upon the frame rate of the videotapes, (i.e., based upon the measuring device, not the population selected), and that the test was not used for any nonjudicial purpose.

The trial court excluded testimony of the test, finding that Dr. Deegear's theory and technique had not been tested in the past, that it relied upon a subjective determination, that it had not been subjected to peer review, that no potential rate of error was established, that the underlying theory or technique had not been generally accepted as valid by the scientific community, and that there had been no nonjudicial uses of the technique.

■ The admission of evidence is committed to the trial court's sound discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). We may disturb the trial court's ruling only if the

ruling was erroneous, an abuse of discretion, and it probably resulted in an improper judgment. *Id.* The trial court abuses its discretion only if it acts without reference to any guiding rules or principles. *Id.* at 754. Here, the trial court appears to have correctly applied the factors set out in *Robinson,* 923 S.W.2d at 557.

The appellants suggest that the *Robinson* factors are not relevant to litigation testing, that they needed only to show that the tests were conducted under substantially similar circumstances to those surrounding the event in question.

The holding by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which sets forth the gatekeeping obligation of the trial judge with respect to expert testimony, applies not only to testimony based upon scientific knowledge, but also to testimony based upon technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael,* — U.S. —, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The abuse of discretion standard that we have previously discussed applies as much to the trial court's decision about how to handle reliability as to its ultimate conclusion. *Id.* We hold that under the facts as we have outlined them, the trial court's analysis was a reasonable application of appropriate guiding principles.

The appellants place great reliance upon the case of *General Motors Corp. v. Gayle,* 951 S.W.2d at 469. We find that case to be distinguishable. First, the case did not involve the admissibility of such a test. It involved whether the trial court could compel General Motors to allow a plaintiff to attend a crash test concerning the accident that was in question in that case. *Id.* at 470. The Court, in holding that the trial court could not compel General Motors to allow the plaintiff or the plaintiff's representative to attend such a test commented that, in any event, the evidence would not be admissible unless proof was made that the test was performed under substantially

similar conditions. *Id.* at 473. Nothing suggests that the Court was determining whether a trial court abuses its discretion when it excludes a scientific test based upon its consideration of the *Robinson* factors.

The appellants also rely upon the case of *Lappe v. American Honda Motor, Inc.,* 857 F.Supp. 222 (N.D.N.Y.1994), *aff'd,* 101 F.3d 682 (2d Cir.1996), urging that the factors set forth in *Robinson,* such as whether they were performed only for litigation and whether they have been published for peer review, should not be applicable in the case of accident reconstruction. An examination of *Lappe,* which involves a district court's determination of whether certain expert testimony may be used at trial, shows that the Court's conclusion is based upon the assumption that *Daubert* is limited to cases involving novel scientific evidence. *See id.* As previously noted, *Daubert* is not so limited and does apply to cases involving technical or other specialized knowledge. *Carmichael,* — U.S. at —, 119 S.Ct. at 1167.

The appellants rely upon *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713 (Tex.1998) for the same principle. *Gammill* holds generally that not all of the *Robinson* factors are always relevant, a conclusion with which we agree. *See Gammill,* 972 S.W.2d at 723. The *Gammill* Court stated that those factors did not fit in situations where the plaintiff's expert in an automobile collision case reached his conclusions by drawing upon general engineering principles and his twenty-two years of experience as an automotive engineer. *Id.* This case, however, involves a scientific test, not an expert reaching conclusions by drawing upon general principles and experience.

The appellants' reliance upon *City of Dallas v. Cox,* 793 S.W.2d 701 (Tex.App.—Dallas 1990, no writ) is also misplaced. In that case the court held that the trial court did not abuse its discretion in admitting a

test into evidence where dissimilarities between the test conditions and the conditions existing at the time of the event in question were minor or were subject to explanation. *Id.* at 734. The court noted the broad discretion of trial courts regarding the admissibility of tests. *Id.* We note that the decision did not involve the trial court's excluding testimony of a test, and that the opinion was written prior to the *Daubert* and *Robinson* opinions. We overrule the appellants' contentions as presented in issue number three.

## ADMISSION OF OTHER CLAIMS

■ The appellants urge in issue number four that the trial court committed reversible error by admitting evidence of approximately ninety other accidents involving other Sears radial arm saws and therefore erred in overruling their post-verdict motions. Kunze offered into evidence a portion of Emerson's database of accidents involving records of injury claims involving the 10″ radial arm saw. Kunze limited his offer to the issues of notice and conscious indifference on the part of the appellants in view of such notice. Generally, the exhibits admitted for this limited purpose consist of notes made by Emerson employees or other records of those who have claimed to suffer injury while using the saw in question. The overwhelming majority involve claims that injury resulted as a result of contact with an unguarded blade. Michael Gililland, whose testimony we have previously discussed, testified that all of the injury reports introduced involved 10-inch radial arm saws that did not have standard lower blade guards, wherein a claim was made that the saw should have been equipped with standard lower blade guards. Two exhibits involve certain summaries of the records made by Emerson employees. We find the exhibits to be relevant to the limited issues for which they were admitted; therefore the trial court did not abuse its discretion in admitting them into evidence.

The appellants urge that the trial court erred in admitting them because they were not shown to be accidents that occurred under reasonably similar circumstances. They rely on the case of *Missouri Pacific Railroad Company v. Cooper,* 563 S.W.2d 233 (Tex.1978). In that case the plaintiff sought to establish that a railroad crossing was extrahazardous at the time of an accident by proof of prior accidents at the location. *Id.* at 236. The Court held that such testimony required a proper predicate that the earlier accidents occurred under similar circumstances. *Id.* at 237. This ruling appears to be based upon the idea that accidents occurring at a railroad crossing under dissimilar conditions are not relevant to the issue of whether the crossing was extrahazardous when the subject accident occurred. The appellants also rely on the case of *E-Z Mart Stores, Inc. v. Terry,* 794 S.W.2d 63 (Tex.App.—Texarkana 1990, writ denied), in which the court held that the trial court erred in allowing testimony that involved other back injuries without showing how those injuries occurred. *Id.* In this case the claims generally involved claims of amputations or lacerations resulting from a hand coming in contact with the saw blade. The evidence of those claims wherein it was alleged that injuries were caused by the saw not having a lower blade guard does show how the injuries were alleged to have occurred and does constitute similar circumstances relevant to the limited purpose for which it was admitted.

■ The appellants argue that they have shown that certain portions of the exhibits were not sufficiently similar to the case at bar and should not have been admitted. They made only a general objection to the exhibits without specifying these particular portions. A general objection to a unit of evidence as a whole that does not point out specifically the portion objected to is properly overruled if any part of it is admissible. *See Speier v. Webster College,* 616 S.W.2d 617, 619 (Tex. 1981). Therefore, that a portion of the

exhibits might have been objectionable does not show error where, as here, the appellants did not object to those portions.

The appellants urge that the trial court may not consider the truth of the claims so as to determine if they occurred under reasonably similar circumstances. The purpose of their admission was to show that the appellants had notice of such claims, not whether each such claim occurred as set forth in the claim.

■ The appellants, in a pre-submission letter presenting supplemental authorities, contend that the trial court erred in allowing the admission of this evidence because it is hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). The reports of other accidents and the related summaries were all introduced as evidence limited to the issues of notice and conscious indifference. They were admitted for the purpose, then, of showing that the appellants were in possession of reports of serious injuries caused by their saw's lack of a lower blade guard. The evidence was not admitted for the purpose of showing that the accidents that were the subject of the claims had occurred or that they were caused by the absence of a lower blade guard. Consequently, the evidence was not admitted to prove the truth of the matter asserted, only that the appellants had notice of the assertion. Therefore, the trial court did not abuse its discretion by allowing the evidence to be admitted, because the evidence was not hearsay.

The appellants further rely upon the opinion in *Johnson v. Ford Motor Co.*, 988 F.2d 573 (5th Cir.1993). We find that case to be distinguishable. In *Johnson*, the court held that a summary of claims and lawsuits was inadmissible hearsay. While it is not totally clear from the court's opinion, it appears that the evidence in *Johnson* was being offered as substantive evidence on the existence of a design defect;

whereas in this case, as we have previously noted, it was not being offered for the truth of the matter asserted. *Id.* at 578–79. With respect to evidence of other accidents, the *Johnson* court held that the trial court did not err in excluding them, even though they were only offered on the issue of notice, because none of the other claims were based on the same defect as Johnson was alleging. *Id.* at 580. Additionally, the court noted, Johnson made no showing that the defendant had notice of the other claims prior to the accident in question. *Id.* In this case most, if not all, of the other accidents involved allegations of severe injuries caused by the absence of a lower blade guard, and most were claims that were on file prior to the accident in question. We overrule the contentions presented by the appellants in issue number four.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE GROSS NEGLIGENCE

■ The appellants argue in issue number five that the evidence is legally and factually insufficient to support the jury's finding that Emerson was grossly negligent. The trial court defined "gross negligence" as follows:

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare or safety of the persons affected by it. The definition of gross negligence includes two elements: (1) viewed objectively from the standpoint of the defendant(s), the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the defendant(s) must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

The test for gross negligence contains both an objective and a subjective prong. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994); *Universal Services Co., Inc. v. Ung,* 904 S.W.2d 638, 641 (Tex.1995). As noted in the definition provided by the court's charge, as viewed objectively from the defendant's standpoint, the act or omission must involve an extreme degree of risk. *See also Moriel,* 879 S.W.2d at 22; *Ung,* 904 S.W.2d at 641. This component, which is a function of both the magnitude and the probability of the potential injury, is not satisfied if the defendant's conduct merely creates a remote possibility of serious injury; rather, the defendant's conduct must create the likelihood of serious injury to the plaintiff. *See Moriel,* 879 S.W.2d at 22; *Ung,* 904 S.W.2d at 641. Also as noted in the definition, the defendant must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998). In evaluating legal sufficiency, we determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Evidence that we have previously detailed was presented from which a reasonable jury could conclude that: (1) Emerson was aware that users of its saw were suffering amputations and other severe injuries while using the saw, and that they were claiming that it was because the saw did not have a lower blade guard; (2) safety officers at Emerson were not interested in claims by users that their injuries were caused by the absence of a lower blade guard and therefore did not always take note of such claims; (3) the use of a lower blade guard as a standard feature would decrease the risk of injury; (4) there is a large propensity for injury on such a saw in the absence of a lower blade guard; (5) most or all other saw manufacturers marketed their saws with such a guard as a standard feature; and (6) Em-

erson, despite continuing reports of injury, continued to market its saw without such a guard as standard equipment, while making such a guard available as an optional accessory; (7) the guard was not readily available for purchase; (8) Emerson had warnings on the saw concerning how to avoid coming into contact with the blade; (9) Emerson spent many years before it was able to develop a lower blade guard that it felt would be good enough to include as standard equipment on the saw, primarily because of safety concerns relating to existing lower blade guards; and (10) during that time Emerson developed a guard that it sold as standard equipment in test markets, but the guard was recalled as a result of negative consumer feedback. We hold that the evidence is legally and factually sufficient to support the jury's finding of gross negligence.

Emerson contends that the evidence is insufficient to show that its conduct involved an extreme degree of risk, because it did not show that it created the likelihood of serious injury. It refers us to what it contends is a small accident frequency rate. However, evidence of a significant number of injuries caused by a defect, together with other evidence, may be sufficient to support a finding of gross negligence, even in the face of statistical evidence showing that the possibility of serious injury is remote. *See General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 595–96 (1999). We hold that notice to Emerson of numerous injuries caused by the lack of a blade guard, together with testimony that there is a large propensity for injury in the absence of the guard, is sufficient to support the "objective element" of gross negligence, despite evidence of a small accident frequency rate.

Emerson relies upon the cases of *Moriel, Ung,* and this Court's opinion in *Bourg Chemical Distributing, Inc. v. Mosier,* 955 S.W.2d 140 (Tex.App.—Beaumont 1997,

pet. granted, judgm't vacated). In *Moriel,* an insurance bad faith case, the Texas Supreme Court held that the evidence was insufficient to support a finding of gross negligence because there was no evidence that the insurer's action in failing to pay a claim created any risk of serious harm to the insured or that the insurer had any subjective awareness that the insured would probably suffer serious injury because of the insurer's delay. 879 S.W.2d at 26. In *Ung,* the decedent Ung was killed when struck by a loose trailer while working on a road crew. His supervisor had previously seen another trailer come loose when running over the same pothole that caused the trailer that hit Ung to come loose. 904 S.W.2d at 639. The court held that the evidence was insufficient to show that Ung's employer created a risk so extreme that it created the likelihood of serious injury and that it did not establish that entire want of care that would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it. *Id.* at 642. In this case Kunze was seriously injured, and the evidence showed that Emerson had notice of numerous serious injuries alleged to have been caused by the absence of a lower blade guard. In *Bourg Chemical,* petition was subsequently granted, our judgment vacated, and the cause remanded to the trial court for entry of judgment in accordance with the parties' settlement agreement. 41 Tex. Sup. Ct. J. 470 (Feb. 26, 1998).

Emerson urges that the evidence is insufficient to establish that it was aware of, but proceeded in conscious indifference to, any extreme risk of harm. However, a reasonable jury could determine from the evidence, as we have previously outlined it, that Emerson chose not to market the saw in question along with a lower blade guard because of the additional cost of doing so, despite numerous amputation injuries that were occurring because the saw did not have such a blade.

Emerson refers us to evidence that it did not market the blade guard because it created safety risks; that it marketed the guard as an accessory, while cautioning users that there might be risks associated with the use of such a lower blade guard; it provided warnings not to reach around the blade to the outfeed end of the saw; its engineers devoted at least twenty years to developing a lower blade guarding system for the saw that would give the operator real protection in all types of cutting operations; and that it has offered use of its subsequently-developed Metzger guard to its competitors, out of concerns for consumer safety. We believe that the jury could reasonably have determined, from the evidence we have discussed, that the lower blade guard would have prevented the serious injuries that were occurring without it; that Emerson chose not to market it with the saw because of the nominal additional cost that would have been involved; and that its failure to do so demonstrated a conscious indifference to the harm. That Emerson might have exercised some care does not necessarily defeat a jury's finding of gross negligence. *See Sanchez,* at 595–96. We overrule the appellants' contentions in issue number five.

### EXEMPLARY DAMAGES EXCEEDING THE CAP

The appellants urge in issue number six that the $2 million punitive damages awarded to Kunze exceeds the four-times-actuals cap in the 1987 version of TEX. CIV PRAC. & REM. CODE § 41.007, which provided that, "exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater." The jury found that Kunze sustained $592,704 .91 in damages. Consequently, the $2 million punitive damage award does not exceed the statutory cap. *See I–Gotcha, Inc. v. McInnis,* 903 S.W.2d 829, 840–41 (Tex.App.—Fort Worth 1995, writ denied).

The appellees contend that the $2 million punitive damages awarded exceeds the cap because Kunze was only awarded $414,893.44 in the final judgment, after the damages found by the jury were decreased due to Kunze's being found 30% at fault. They rely on *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex.App.—Houston [1st Dist.] 1995, no writ). While that case stated that under the cap the amount of punitive damages awarded might not exceed the greater of four times the actual damages *awarded* or $200,000, it did not involve the issue before us and did not state whether it meant the amount awarded by the jury or the amount awarded in the judgment. We overrule the contention presented in the appellants' issue number six.

The judgment is AFFIRMED.