Affirmed and Memorandum Opinion filed November 19, 2009.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00750-CV



 

Khalil Bejjani, Individually
and dba Bejjani Enterprises, Inc., and dba Bejjani Automotive Group, Inc. and
dba Toyex Bimmer Sales & Services and dba Toyex/Bimmer; Bejjani Enterprises,
Inc.,  Individually and dba toyex/bimmer; bejjani automotive group, inc.,
individually and dba toyex/bimmer,
Appellants

V.

TRC Services, Inc., Appellee

 



On Appeal from the County Civil
Court at Law No 2

Harris County, Texas

Trial Court Cause No. 813109



 

MEMORANDUM  OPINION

 

Khalil Bejjani, individually, and d/b/a Bejjani
Enterprises, Inc., and d/b/a Bejjani Automotive Group, Inc., and d/b/a Toyex
Bimmer Sales & Services, and d/b/a Toyex/Bimmer; Bejjani Enterprises,
Inc.,  individually, and d/b/a toyex/bimmer; Bejjani Automotive Group, Inc.,
individually, and d/b/a toyex/bimmer, appeal from the trial court’s
judgment against them in favor of TRC Services, Inc. in connection with the
repair of a 1999 Lexus.  We affirm.

Background

On November 17, 2003, TRC Services, Inc.’s 1999 Lexus
was damaged when it was flooded during a storm.  The Lexus was towed to Toyex
Bimmer Sales & Services (“Toyex Bimmer”), an automotive repair shop.  Toyex
Bimmer is owned and operated by Khalil Bejjani through Bejjani Enterprises,
Inc. and Bejjani Automotive Group, Inc.  TRC Services is owned and operated by
William and Linda Ferguson.    

Toyex Bimmer accepted the vehicle for evaluation only
and determined that the engine block needed repair.  Toyex Bimmer presented TRC
Services with three repair options: (1) repair the existing engine block; (2)
remove the existing engine block and replace it with a rebuilt block for a
quoted price of $12,050.47; or (3) remove the existing engine block and replace
it with a new Lexus original equipment manufacturer (“OEM”) engine block for a
quoted price of $14,088.42. 

TRC Services insured the 1999 Lexus through Safeco
Insurance Company.  TRC Services contacted Safeco to discuss the repair
options, and Safeco approved replacing the damaged engine block with a new
Lexus OEM engine block for $11,607.91.  Although TRC Services did not authorize
Toyex Bimmer to perform the repair services, Toyex Bimmer nonetheless did so. 
Toyex Bimmer then sought payment for the work from Safeco.  Toyex Bimmer told
Safeco that it had a written authorization to perform the repair services.  In
fact, Toyex Bimmer did not have written or verbal authorization.  Safeco issued
a joint check in the amount of $11,607.91 payable to William Ferguson and Toyex
Bimmer.  

The exact nature of the repair services performed by
appellants was unclear.  At trial, Khalil Bejjani testified inconsistently,
stating at one point that the damaged engine block was replaced with a new
Lexus OEM engine block, and stating at another point that it was replaced with
a rebuilt block.  TRC Services requested to see Toyex Bimmer’s vendor invoices
and records to verify that a new Lexus OEM engine block had been installed. Toyex
Bimmer refused TRC Services’ request to view its records.  TRC Services refused
to sign the Safeco check.  Toyex Bimmer subsequently foreclosed on its
mechanic’s lien and sold the 1999 Lexus.

TRC Services filed this suit on March 26, 2004,
alleging six causes of action: (1) “laundry list” violations and breach of
warranty under the Texas Deceptive Trade Practices Act (“DTPA”); (2) breach of
contract; (3) negligence; (4) conversion; (5) fraud; and (6) violation of the
Texas Theft Liability Act.[1] 
The case was tried to a jury.  The jury answered “yes” to questions asking
whether Bejjani Enterprises, Bejjani Automotive Group, and Toyex Bimmer (1)
engaged in acts prohibited by the DTPA; (2) breached an express warranty under
the DTPA; (3) acted negligently; and (4) converted the 1999 Lexus.  The jury
answered “no” as to Khalil Bejjani individually on all claims.  The jury
awarded TRC Services $27,025 in response to a damages question predicated on a
“yes” answer to either the DTPA “laundry list” liability question or the
warranty question.  The jury awarded no damages in connection with TRC
Services’ negligence and conversion claims.  The jury also awarded TRC Services
$25,000 for attorney’s fees. 

The trial court signed a final judgment in conformity
with the jury’s verdict on May 5, 2008.  Bejjani Enterprises, Bejjani
Automotive Group, and Toyex Bimmer now appeal from this judgment.              


Analysis

Appellants raise four issues on appeal: (1) the
evidence is legally and factually insufficient to support the jury’s finding
that appellants engaged in acts prohibited by the DTPA that were a producing
cause of damages, breached a warranty, acted negligently, or converted the 1999
Lexus; (2) the jury’s verdict should be set aside due to irreconcilable
conflicts in the jury’s answers to damages questions; (3) the trial court erred
in denying appellants an offset in the amount of the insurance check TRC Services
received from Safeco; and (4) the jury’s award for attorney’s fees should be
set aside because TRC Services failed to segregate its attorney’s fees.  We
address each in turn.

I.         Legal and
Factual Sufficiency

Appellants first contend the evidence is legally and
factually insufficient to support findings that they committed any of the DTPA
“laundry list” violations submitted to the jury; breached a warranty; acted
negligently; or converted the 1999 Lexus.  

Legal insufficiency challenges may be sustained only
when the record discloses one of the following situations: (a) a complete
absence of evidence of a vital fact; (b) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact; (c) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (d) the evidence establishes conclusively the opposite of the
vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810
(Tex. 2005) (citing Robert W. Calvert, “No Evidence” and
“Insufficient Evidence Points of Error,” 38 Tex. L. Rev. 361, 362-63 (1960)).

 We must consider evidence in
the light most favorable to the verdict and indulge every reasonable inference
that would support it.  City of Keller, 168 S.W.3d at 822.  If the
evidence allows only one inference, neither jurors nor the reviewing court may
disregard that evidence.  Id.  “The traditional scope of review does not
disregard contrary evidence in every no evidence review if there is no favorable
evidence (situation (a) above), or if contrary evidence renders supporting
evidence incompetent (situation (b) above) or conclusively establishes the
opposite (situation (d) above).”  Id. at 810-11.  If the evidence at
trial would enable reasonable and fair-minded people to differ in their
conclusions, then jurors must be allowed to do so.  Id. at 822.  Accordingly,
the ultimate test for legal sufficiency always must focus on whether the
evidence would enable reasonable and fair-minded jurors to reach the verdict
under review.  Id. at 827.  Legal sufficiency review in the proper light
must credit favorable evidence if reasonable jurors could do so, and must
disregard contrary evidence unless reasonable jurors could not do so.  Id.
 The reviewing court cannot substitute its judgment for that of the trier of
fact if the evidence falls within this zone of reasonable disagreement.  Id.
at 822.

In reviewing factual sufficiency, we must consider
and weigh all the evidence. Golden Eagle Archery, Inc. v. Jackson, 116
S.W.3d 757, 761 (Tex. 2003).  We can set aside a verdict only if the evidence
is so weak or if the finding is so against the great weight and preponderance
of the evidence that it is clearly wrong and manifestly unjust. Id.

We first address appellants’ argument that there is
legally and factually insufficient evidence to support the jury’s finding that
appellants violated the DTPA by breaching an express warranty.  See Tex.
Bus. & Com. Code Ann. § 17.50(a)(2) (Vernon 2002).  

Question 2 asked the following:

Was the failure,
if any, of the Defendants to comply with a warranty a producing cause of
damages to TRC?

 

“Producing
cause” means an efficient, exciting, or contributing cause that, in a natural
sequence, produced the damages, if any.  There may be more than one producing
cause.

 

“Failure to
comply with a warranty” means any of the following:

 

Failing to
comply with an express warranty.

 

An express
warranty is any affirmation of fact or promise made by the Defendants that
relates to the Vehicle repair.  It is not necessary that formal words
such as “warranty” or “guaranty” be used or that there be a specific intent to
make a warranty.

 

OR

 

Failing to
perform services in a good and workmanlike manner.

 

A good and
workmanlike manner is that quality of work performed by one who had the
knowledge, training, or experience necessary for the successful practice of a
trade or occupation and performed in a manner generally considered proficient
by those capable of judging such work.

 

Answer “Yes” or
“No” for each of the following:

a.         KHALIL
BEJJANI                                       ANSWER: No

b.         BEJJANI
DEFENDANTS                            ANSWER: Yes

 

Neither side objected to the
wording of this question at trial, and neither side challenges the correctness
of this submission on appeal.[2] 
Therefore, this court reviews the sufficiency of the evidence under the
charge submitted to the jury, even if the charge did not correctly state Texas
law.  See Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000) (holding that
appellate courts review the sufficiency of the evidence against the jury charge
actually submitted regarding issues as to which no party objected to the
charge, even if the charge is contrary to applicable law); Hirschfeld Steel
Co. v. Kellogg Brown & Root, Inc., 201 S.W.3d 272, 283-86 (Tex.
App.—Houston [14th Dist.] 2006, no pet.) (reviewing sufficiency of evidence
based on unobjected-to jury instruction and rejecting various arguments based
on different legal standards).

            At trial, there
was evidence of the following:

·       
TRC Services never gave written or verbal authorization to
appellants to perform any repairs on the 1999 Lexus.

·       
TRC Services instructed appellants not to perform any repair services
on the 1999 Lexus.

·       
Despite this lack of authorization from the vehicle’s owner,
appellants performed repair services on the vehicle.

·       
Appellants told Safeco they had a written authorization for the
repair services.

·       
Appellants never produced a signed authorization for the repair
services.

·       
After Safeco issued a joint check to William Ferguson and Toyex
Bimmer, Ferguson refused to sign the check for repair services that TRC
Services had not authorized.

·       
TRC Services refused to pay for the unauthorized repair services
and demanded that appellants return the vehicle.

·       
Instead of returning the vehicle, appellants foreclosed on a
purported lien on the vehicle under Texas Property Code Chapter 70.

·       
In their notice of foreclosure on this purported lien, appellants
asserted that they had a lien under Texas Property Code sections 70.001-70.008 and
affirmed that $12,007.91 was due and owing from TRC Services for the repair services
performed on the 1999 Lexus.

·       
In foreclosing this purported lien, appellants affirmed that they
had “complied with all applicable provisions of Chapter 70 of the State
Property Code” and were foreclosing the purported lien “in accordance
therewith.”

·       
The foreclosure of the purported lien resulted in TRC Services’
damages.

 

There was evidence that appellants affirmed that they
foreclosed their purported lien in accordance with the applicable provisions of
Texas Property Code Chapter 70.  A person who repairs a vehicle does not have a
valid lien under Chapter 70 and does not have a right to sell the vehicle under
that statute if the owner of the vehicle did not authorize the repair services
that are the basis for the purported lien.  See Berry v. Covarrubias,
No. 01-02-01141-CV, 2004 WL 36001, at *3-4 (Tex. App.—Houston [1st Dist.] Jan.
8, 2004, no pet.) (mem. op.) (holding that individual who repaired vehicle and
sold it purporting to foreclose Chapter 70 lien for unpaid repair services had
no right to sell the vehicle under Chapter 70 because owner never agreed that
individual could repair the vehicle).  Texas Property Code Chapter 70, in
pertinent part, provides a lien for those who repair vehicles for the “amount
due under the contract for the repairs.”  Tex. Prop. Code Ann. § 70.001(a)
(Vernon 2007).  

Under applicable standards of review, there is
legally and factually sufficient evidence that (1) appellants affirmed that
$12,007.91 was due and owing from TRC Services under a contract for the repair
of the vehicle; (2) appellants affirmed that they had the owner’s authorization
to perform the repair services; (3) appellants failed to comply with these
affirmations of fact relating to the vehicle’s repair; and (4) appellant’s
failure to comply with an express warranty was an efficient, exciting, or
contributing cause that, in a natural sequence, produced TRC Services’
damages.  See City of Keller, 168 S.W.3d at 827; Golden Eagle Archery,
Inc., 116 S.W.3d at 761; Osterberg, 12 S.W.3d at 55.  

Appellants argue that an express warranty “is not
enforceable unless it becomes part of the basis of the bargain.”   Cf. Tex.
Bus. & Com. Code Ann. § 2.313(a)(1) (Vernon 2009) (“Express warranties
by the seller are created as follows: (1)
Any affirmation of fact or promise made by the seller to the buyer which
relates to the goods and becomes part of the basis of the bargain creates an
express warranty that the goods shall conform to the affirmation or promise . .
. .”).  Courts have recognized that this “basis of the bargain” language
reflects the common-law requirement of reliance.  Am. Tobacco Co., Inc. v.
Grinnell, 951 S.W.2d 420, 436 (Tex. 1997); Sw. Bell Tel. Co. v. FDP
Corp., 811 S.W.2d 572, 575 & n.2 (Tex. 1991); Shamrock Fuel &
Oil Sales Co. v. Tunks, 416 S.W.2d 779, 786 (Tex. 1967) (common law
requires reliance on a representation before an express warranty arises); see
Morris v. Adolph Coors Co., 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987,
writ ref’d n.r.e.).  Because the jury charge did not include language
instructing the jury that an express warranty must be “part of the basis of the
bargain,” and there is no objection to this omission, we do not address
appellants’ argument regarding reliance and whether the warranty was part of
the basis of the bargain.  See Sage St. Assocs. v. Northdale Constr. Co.,
863 S.W.2d 438, 447 (Tex. 1993) (sufficiency of the evidence is measured
against the legal standards set forth in the jury charge in absence of
objection).      

We overrule appellants’ first issue. [3]  

II.        Conflict in Jury Answers

Appellants next contend that the trial court erred by
entering judgment on the jury’s verdict because of irreconcilable conflicts
between the jury’s answers to questions regarding liability and damages
relating to the negligence and conversion claims.  Appellants contend that
there are irreconcilable conflicts in the jury’s answers to the following jury
questions: 

Jury Question 6

Did
the negligence, if any, of the Defendants proximately cause injury to TRC?

Answer “Yes” or
“No” for each of the following:

a.         KHALIL
BEJJANI                                       ANSWER: No

b.         BEJJANI
DEFENDANTS                            ANSWER: Yes

 

 

Jury Question 7

What
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate TRC for its damages, if any, that resulted from the conduct that you
found in response to question no. 6?

 

Answer $ 0

 

Jury Question 8

Did the Defendants wrongfully convert the Vehicle?

 

a.         KHALIL
BEJJANI                                       ANSWER: No

b.         BEJJANI
DEFENDANTS                            ANSWER: Yes

 

Jury Question 9

What
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate TRC for its damages, if any, that resulted from the conduct that you
found in response to question no. 8?

 

Answer $ 0

 

Appellants did not object to the asserted conflict in
the jury’s answers under Texas Rule of Civil Procedure 295 before the jury was
discharged.  Accordingly, appellants failed to preserve error on this issue.  See
Fleet v. Fleet, 711 S.W.2d 1, 3 (Tex. 1986); Coastal Chem. Inc. v.
Brown, 35 S.W.3d 90, 99 (Tex. App.—Houston [14th Dist.] 2000, pet. denied);
see also Oyster Creek Fin. Corp. v. Richwood Invs., 176 S.W.3d 307,
324 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); Sears, Roebuck &
Co. v. Kunze, 996 S.W.2d 416, 423-24 (Tex. App.—Beaumont 1999, pet.
denied); City of Port Isabel v. Shiba, 976 S.W.2d 856, 860 (Tex.
App.—Corpus Christi 1998, pet denied); Torres v. Caterpillar, Inc., 928
S.W.2d 233, 244-45 (Tex. App.—San Antonio 1996, writ denied); Roling v.
Alamo Group (USA), Inc., 840 S.W.2d 107, 109 (Tex. App.—Eastland 1992, writ
denied).  

We overrule appellants’ second issue.

III.      Offset of Insurance Check

Appellants next contend that the trial court erred by
not offsetting insurance benefits allegedly received by TRC Services against
TRC Services’ actual damages recovery under the one satisfaction rule.  

Under the one satisfaction rule, a plaintiff is
entitled to only one recovery for the same loss.  Tony Gullo Motors I, L.P.
v. Chapa, 212 S.W.3d 299, 303-04 (Tex. 2006); Crown Life Ins. Co. v.
Casteel, 22 S.W.3d 378, 390 (Tex. 2000).  The collateral source rule is an
exception to the one satisfaction rule.  Brown v. Am. Transfer and Storage
Co., 601 S.W.2d 931, 936 (Tex. 1980).  Under the collateral source rule, a
wrongdoer cannot benefit from insurance independently procured by the injured
party and to which the wrongdoer was not privy.  Brown, 601 S.W.2d at 936;
Tex. & Pac. Ry. v. Levi & Bro., 59 Tex. 674 (1883); Taylor v.
Am. Fabritech, Inc., 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.]
2004, pet. denied).  The right to an offset is an affirmative defense.  Brown,
601 S.W.2d at 936; Superior Trucks, Inc. v. Allen, 664 S.W.2d 136, 149
(Tex. App.—Houston [1st Dist.] 1983, writ ref’d n.r.e.).   The party asserting
offset has the burden of pleading offset and of proving facts necessary to
support it.  Brown, 601 S.W.2d at 936; Allen, 664 S.W.2d at 149. 

Appellants asserted offset in their pleadings and
claim a credit for $11,607.91 — the amount of the Safeco check made jointly
payable to William Ferguson and Toyex Bimmer.  There is no evidence that this
check was ever cashed.  Nonetheless, presuming, without deciding, that TRC
Services received $11,607.91 in insurance benefits from Safeco, these benefits
would fall under the collateral source rule.  See Brown, 601
S.W.2d at 936; Taylor, 132 S.W.3d at 626.   TRC Services independently
contracted with Safeco for insurance on its vehicle, and appellants were not
privy to the contract.  Therefore, the one satisfaction rule is not
applicable.  See Brown, 601 S.W.2d at 936; Taylor, 132
S.W.3d at 626.    

We overrule appellants’ third issue.    

IV.      Segregation of Attorney’s
Fees

            In their last
issue, appellants contend that the trial court erred in awarding attorney’s
fees because TRC Services failed to segregate its attorney’s fees among its causes
of action.  When attorney’s fees are recoverable on some claims but not others,
a failure to segregate attorney’s fees can bar recovery.  Green Int’l, Inc.
v. Solis, 951 S.W.2d 384, 389 (Tex. 1997); Cullins v. Foster, 171
S.W.3d 521, 535-36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  The
failure to segregate is waived if no one objects to the unsegregated fees
before the trial court charges the jury.  Solis, 951 S.W.2d at 389; Hruska
v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988); Cullins,
171 S.W.3d at 535-36.  Appellants did not object at trial to TRC Services’
failure to segregate its attorney’s fees.  Therefore, we do not consider this
complaint on appeal.  See Solis, 951 S.W.2d at 389; Hruska,
747 S.W.2d at 785; Cullins, 171 S.W.3d at 535-36.  

We overrule appellants’ fourth issue.

Conclusion

            We affirm
the trial court’s judgment.

 








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Boyce.

 

 









[1]
TRC Services nonsuited its claim under the theft liability act on July 20,
2006, and nonsuited its breach of contract and fraud claims on October 17,
2007. 

 





[2]
The term “Bejjani Defendants” is defined in the charge as “Bejjani Enterprises,
Inc. and d/b/a Bejjani Automotive Group, Inc. and d/b/a Toyex Bimmer Sales
& Service and d/b/a Toyex/Bimmer; Bejjani Enterprises, Inc., individually
and d/b/a Toyex/Bimmer; Bejjani Automotive Group, Inc., individually and d/b/a
Toyex/Bimmer.”





[3]
Because we conclude that there is legally and factually sufficient evidence to
support the jury’s “yes” answer for “Bejjani Defendants” to Question 2, we do
not address the remainder of appellants’ legal and factual sufficiency
arguments.